IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| David R. Daines, Trustee of the Verna R. Daines Trust, | ) ) ) | MEMORANDUM DECISION |
| | ) | Case No. 20100997-CA |
| Plaintiff and Appellant, | ) ) | |
| v. | ) ) | F I L E D (April 12, 2012) |
| Logan City, a Utah Municipal Corporation, | ) ) ) ) | 2012 UT App 108 |
| Defendant and Appellee. | ) | |

-----

First District, Logan Department, 070100252
The Honorable Clint S. Judkins

Attorneys: David R. Daines, Logan, Appellant Pro Se
Jody K. Burnett and Robert C. Keller, Salt Lake City, for Appellee

-----

Before Judges McHugh, Voros, and Davis.

VOROS, Associate Presiding Judge:

¶1 David R. Daines, as trustee of the Verna R. Daines Trust, (Daines) seeks to maintain a house as a "boarding-rooming triplex with unlimited occupancy" in a neighborhood comprised predominantly of multi-family dwellings. The Board of Adjustment for the City of Logan refused his request for a non-conforming use on the ground that Daines could not show that prior use of the house as anything more than a

duplex was legal under Logan City ordinances.[1]  On cross-motions for summary judgment, the district court denied Daines's claims.  He challenges the ruling of the trial court on various grounds, many of them at least nominally constitutional.  We affirm.[2]

¶2     This case involves a land use authority's decision.  When this court reviews a trial court's judgment in such a case, "we act as if we were reviewing the land use authority's decision directly, and we afford no deference to the [trial] court's decision.  Like the review [by] the [trial] court, our review is limited to whether a land use authority's decision is arbitrary, capricious, or illegal." *Pen & Ink, LLC v. Alpine City*, 2010 UT App 203, ¶ 16, 238 P.3d 63 (internal quotation marks omitted), *cert. denied*, 241 P.3d 771 (Utah 2010); *see also* Utah Code Ann. § 10-9a-801(3)(c)(2007).[3]

¶3     Daines's first contention is that the Board lacked jurisdiction to hear his administrative appeal.  Daines concedes that the Board had jurisdiction to hear appeals asserting nonconforming rights under the 1997 Logan Municipal Code, but argues that this jurisdiction was revoked with the adoption of the Administrative Enforcement Code in 2004.  Under the Code, he argues, "jurisdiction over appeals from nonconforming rights determinations . . . was vested in the Hearing Examiner."  On the contrary, the Administrative Enforcement Code forbids a hearing examiner to determine nonconforming rights:

> A hearing examiner shall not make determinations as to the existence of nonconforming rights.  If a responsible person claims a nonconforming right as a defense, the hearing examiner shall continue the administrative enforcement hearing and shall refer the matter to the Logan City Board of

---

[1]Daines estimates that the denial of his request to grandfather this multiple use represents a loss of approximately $200,000.

[2]The parties stipulated to waive oral argument and submit the appeal for decision on the briefs.  The court agrees that "the decisional process would not be significantly aided by oral argument."  Utah R. App. P. 29(a)(3).

[3]The events relevant to this appeal occurred while a prior version of the statute was in effect.  However, we cite the current version of the code as a convenience to the reader because the relevant provisions have not been amended.

Adjustment for a determination as to the existence of the nonconforming right. The Board of Adjustment's decision shall be binding on the hearing examiner. The responsible person shall bear the costs of the appeal to the Board of Adjustment.

Logan, Utah, Administrative Enforcement Code § 17.60.220(F). We are unwilling to read a provision stating that a hearing examiner "shall not make" determinations as to the existence of nonconforming rights to mean that a hearing examiner *must make* determinations as to the existence of nonconforming rights. *Cf. State v. Wallace,* 2006 UT 86, ¶ 9, 150 P.3d 540 ("When interpreting a statute, we must generally presume the legislature used each term thoughtfully. . . . [The court's] task is to interpret the words used by the legislature, not to correct or revise them.").

¶4     In a related argument, Daines claims that the existence of a nonconforming use "is not a defense and the burden of proving illegality . . . is on the City." However, the Code itself refers to "a nonconforming right as a defense," Logan, Utah, Administrative Enforcement Code § 17.60.220(F), and states, "The burden to prove any raised defenses shall be upon the party raising any such defense." *Id*. § 17.60.230(G). Again, these provisions plainly identify a nonconforming use as a defense and place the burden of proving this defense upon Daines. Daines assails this plain reading on several grounds. For example, he asserts that this placement of the burden "has created a virtual police state" in Logan. This assertion, doubtful on its face, is unsupported by any citation to the record and we therefore do not consider it. *See* Utah R. App. P. 24(a)(9) (requiring an appellant's brief to "contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on"); *see also State v. Davie,* 2011 UT App 380, ¶ 16, 264 P.3d 770 ("'Utah courts routinely decline to consider inadequately briefed arguments.'" (quoting *State v. Bryant,* 965 P.2d 539, 549 (Utah Ct. App. 1998)). Daines also argues that "[b]ecause the City elected to change its 1950 plan and zoning under which over half of the residences became nonconforming rights, the City . . . should logically have the burden of proving ancient and buried Illegality facts." Even were we to agree with Daines that his approach is fairer or more logical on the facts of this case, his brief offers no legal ground to disregard the plain language of the ordinance. The brief does not demonstrate that the provisions are unconstitutional or otherwise unenforceable under controlling authority. In fact, other than the Code provisions themselves, he cites no

legal authority in support of this challenge. We accordingly reject it. *See* Utah R. App.
P. 24(a)(9).

¶5    Daines also refers to numerous alleged "due process and equal protection
denials." He contends, for example, that he was denied due process because he was not
notified of his right to appeal to a Hearing Examiner and that Logan City's
Administrative Enforcement Code unconstitutionally requires a Hearing Examiner to
stay proceedings pending action by the Board. However, neither due process nor equal
protection is adequately briefed under controlling state or federal cases. *See* Utah R.
App. P. 24(a)(9) (requiring "citations to the authorities, statutes, and parts of the record
relied on"). We accordingly do not consider these theories. *See Brigham City v. Stuart*,
2005 UT 13, ¶ 14, 122 P.3d 506 (stating that the court is "resolute in [its] refusal to take
up constitutional issues which have not been properly preserved, framed, and briefed"),
*rev'd on other grounds*, 547 U.S. 398 (2006).

¶6    Daines's second contention is that the Board's "failure to adopt the due process
rules of procedure required by the 1997 Ordinance rendered its de facto actions invalid
and beyond its jurisdiction." However, when Daines presented his "challenge to [the
Board's] authority for lack of rules," the Board adopted rules and bylaws before hearing
Daines's appeal. Daines's claim that the Board acted without having adopted rules and
bylaws is thus unpersuasive.

¶7    Daines's third contention is that the Board's adoption of the rules and bylaws
violated the federal and state due process clauses. By adopting the rules and bylaws, he
asserts, the Board "intentionally elected to divert [him] into an extra jurisdictional
pretext for a quasi-judicial appeal process." "The key to the guise," he continues, "was
adoption of rules, invalid on their face for future cases as a cover for continuing its de
facto executive-legislative rights termination policy business as usual, rather than
confessing error." He maintains that the Board should instead have "aborted the de
facto appeal process." Again, although Daines refers to the federal and state due
process clauses, he does not, aside from a single case citation in a footnote, brief either
provision. We accordingly do not consider this contention. *See Brigham City*, 2005 UT
13, ¶ 14.

¶8    Daines's fourth contention is that the City denied him "'class-of-one' equal
protection because [Daines] was intentionally treated differently from others similarly
situated and there was no rational basis for such treatment." This claim rests on *Village*

*of Willowbrook v. Olech,* 528 U.S. 562 (2000). *Olech* states, "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See id*. at 564 (citations omitted). Olech alleged that the municipality demanded a 33-foot easement as a condition of connecting her property to the municipal water supply but required only a 15-foot easement from similarly situated property owners. *See id.* at 565. She also alleged that the municipality's demand was "irrational and wholly arbitrary" as demonstrated by the fact that it ultimately connected her property after receiving a clearly adequate 15-foot easement. *See id*. The Supreme Court held that "[t]hese allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis." *See id*. The Court did not reach the alternative theory of "subjective ill will" relied upon by the lower court. *See id*.

¶9     Daines has not established the elements of this type of constitutional claim. He does point to record evidence of bad blood between himself and the City for various reasons, including his resistence to the City's attempt to "extort a gift of street frontage" for a street improvement. He also alleges that "[m]ulti-family neighbors on both sides were similarly situated, did not accuse the City of attempted gift extortion and have not been charged with single-family zone violations." But Daines's argument ignores the City's stated reason for denying him a nonconforming use: "In order for the property to be 'grandfathered' as multiple units, the information must show that the use of the property as multiple units was *legally established* and has been continuously occupied." Daines does not directly challenge the accuracy of this statement, nor does he identify record evidence demonstrating that his well-established historical multi-family use was legally established. He thus tacitly admits that, under the Code as written, he cannot rebut the City's proof that the historical use of the home did not comply with the procedural requirements of the code.[4] Furthermore, he does not claim, or cite record

---

[4]Before the Board of Adjustment, Daines submitted numerous affidavits establishing multiple use. He alleged that a building permit was obtained for the original construction of the home as a single-family residence with a basement apartment. He further alleged that no building permits were required when the upstairs portion of the home was divided into separate apartments, as no additional

(continued...)

evidence that establishes, that his "similarly situated" neighbors were similarly in violation of the applicable code section. Thus, Daines has shown neither that he "has been intentionally treated differently from others similarly situated" or that "there is no rational basis for the difference in treatment." *See Olech*, 528 U.S. at 564. His class-of-one claim therefore fails.

¶10 Daines's fifth contention is that a City inspector searched the Property without a warrant and without probable cause in violation of the City's Administrative Enforcement Code, due process, and the Fourth Amendment to the United States Constitution. Because this claim was not preserved before the Board or the trial court, we do not consider it. *See Brigham City v. Stuart,* 2005 UT 13, ¶ 14, 122 P.3d 506,; *see also State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346.

¶11 Daines's sixth contention is that the City Director of Community Development's denial of his nonconforming use application was arbitrary and capricious. "A final decision of a land use authority or an appeal authority is valid if the decision is supported by substantial evidence in the record and is not arbitrary, capricious, or illegal." Utah Code Ann. § 10-9a-801(3)(c) (2007). Daines's application was denied on the ground that, while he amply demonstrated multi-family use over a period of decades, he was unable to show that this use was "legally established" as required by City ordinances. *See* Logan, Utah, Municipal Code § 17.59.050(G) ("No use may be considered a legally existing nonconforming use under the provisions of this Title if the use was never lawfully established, including and not limited to, any combination of appropriate license, permits or fees."). As stated, on appeal Daines points to no evidence in the record that the historical multiple use was legally established. Accordingly, he has not demonstrated that the Board's action was arbitrary or capricious.

---

[4](...continued)
construction was required. However, when a Board member cited a code provision requiring a building permit to be issued by the Chief Building Officer when "there is a change of occupancy character," Daines responded that he did not think that provision was enforced by the City and "stated he was asking for a variance from the requirement of obtaining a building permit." In addition, it appears that no Certificate of Occupancy was sought or issued when the character of the home's use changed in 1988 after Daines's mother developed a health issue.

¶12    Daines's seventh contention is that the City's landlord licensing ordinance, *see id.* at §§ 5.17.010–120, "facilitates the Mayor's and City's declared purpose of terminating legal nonconforming multi-family rights in ways that violate due process, equal protection, freedom from unlawful searches, . . . and Utah Code § 10-9a-511(6)–(8)." This claim was not preserved before the Board or the trial court and is not adequately briefed on appeal. Therefore, we do not consider it further. *See Brigham City*, 2005 UT 13, ¶ 14.

¶13    Daines's eighth contention is that the constitutional violations claimed in his previous contentions support a civil rights claim against the City pursuant to 42 United States Code section 1983. Because we have rejected Daines's underlying constitutional claims, his civil rights action necessarily fails. And because his civil rights action fails, his claim for attorney fees on appeal under 42 United States Code section 1988 also fails.

¶14    In sum, based on the record before the Board, we conclude that Daines has not demonstrated that the Board's decision in this case was arbitrary, capricious, or illegal. The trial court was thus correct in denying Daines relief.

¶15    Affirmed.


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


                                        -----


¶16    WE CONCUR:


_____
Carolyn B. McHugh,
Presiding Judge


_____
James Z. Davis, Judge