2011 UT App 380

**STATE of Utah, Plaintiff and Appellee,**

v.

**Grace Helen DAVIE, Defendant and Appellant.**

**No. 20100189–CA.**

Court of Appeals of Utah.

Nov. 3, 2011.

J. Bryan Jackson, Cedar City, for Appellant.

Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee.

Before Judges McHUGH, VOROS, and ROTH.

MEMORANDUM DECISION

VOROS, Judge:

¶ 1 Defendant Grace Helen Davie appeals her conviction and sentence for witness tampering, a third-degree felony, and assault, a class A misdemeanor, *see* Utah Code Ann. § 76-5-102 (2008) (assault); *id.* § 76-8-508(1) (witness tampering). She contends that the witness tampering statute is unconstitutionally overbroad and vague, that the

evidence was insufficient to find her guilty of assault, and that her sentence was cruel and unusual. We affirm.

¶ 2 The witness tampering charge arose out of a fight between Davie's son, Jeremiah McFall, and his wife, Jennifer McFall, in July 2008.[1] The couple had an argument one evening that culminated in front of their house as Jeremiah tried to physically stop Jennifer from leaving and force her to go inside the house. A neighbor saw the fight and called the police, who arrested Jeremiah. Jennifer gave a statement to Officer Vincent Cox about the incident.

¶ 3 That evening, Jennifer called Davie to let her know that her son was in jail. Davie said she would drive to the jail the next day and invited Jennifer to go along and let Jeremiah's probation officer know what happened. Jennifer agreed. Davie called Jennifer several times that night, asking Jennifer if she was sure that the fight had happened the way she described and that Jeremiah had been abusive. She also told Jennifer that she could change the statement she had given to Officer Cox.

¶ 4 On the drive to the jail the next morning, Davie again asked Jennifer if she was sure Jeremiah was being abusive. Davie told Jennifer that Jeremiah could be sent to prison, and that if he was, he would kill himself. Davie then asked Jennifer if she knew what "recant" meant and explained that she could go back to the officer and tell him she had not given him all the facts. Davie asked Jennifer if she would keep Jeremiah out of prison if she had the chance. She told Jennifer to "be imaginative." Davie continued, "hypothetically—and I'm not telling you to do this, but hypothetically, what if you were trying to cut yourself, and Jeremiah was trying to get a knife away from you?" When Jennifer protested, Davie repeated the "hypothetical" scenario and then prodded her further:

---

1. The facts as recited are largely taken from Jennifer's trial testimony. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard. However, we present conflicting evidence to the extent necessary to clarify the issues raised on appeal." *State v. Nichols*, 2003 UT App 287, ¶ 1 n. 1, 76 P.3d 1173 (citation and internal quotation marks omitted).

[I]f that could keep him from going to prison, do you think you would be able to go and tell them that you were confused on your statement; that you were upset and emotional, and you were embarrassed to let them know that you cut yourself and that he was just trying to protect you from yourself?

Davie then reassured Jennifer that she would not get into trouble for changing her statement, and suggested that she start by telling Jeremiah's probation officer that she wanted to recant. Davie also added that she (Davie) had been in trouble for witness tampering before and that if anyone asked, Jennifer should say that Davie had not told her to change her statement.

¶ 5 At the police station, Jennifer spoke with the probation officer, who told her that she would have to talk to Officer Cox. On the ride home, when Jennifer expressed concern that Officer Cox might not believe her, Davie again told her to "be imaginative," that Jeremiah would kill himself if he went to prison, and that if Jennifer loved him, she "wouldn't let something like that happen to him." When Jennifer met with Officer Cox, he was suspicious of her new story. He asked Jennifer if Davie had told her to change her statement. Jennifer acknowledged that Davie had, adding that Davie also told her that "she's not telling me to do that."

¶ 6 At trial, Davie gave a different version of events. She testified that, after learning of Jeremiah's arrest, she decided to drive to the jail to arrange bail. Jennifer asked to go along. On the ride to the jail, Jennifer told Davie that she had been trying to cut herself the night before. Then Jennifer asked, "[W]hat if Jeremiah was trying to take the razorblade away from [me]?" Davie told her that if that was the case, Jennifer should tell the probation officer. However, Officer Cox testified that after Davie was arrested, she admitted that she had told Jennifer that she could recant if her original statement was not true, but denied that she had asked Jennifer to be imaginative or said that Jeremiah would kill himself.

¶ 7 The court found Jennifer's testimony credible and Davie's testimony incredible. It determined that Davie's testimony was inconsistent and conflicted with that of police officers who also testified at trial. It further found that Davie had incentives to lie while the police officers did not. Therefore, the court found Davie guilty of witness tampering.

¶ 8 Davie's assault charge arose out of a fight between Jeremiah and Jennifer in October 2008. The couple was living in a trailer on Davie's property. During an argument one night, Jeremiah began to beat Jennifer. At one point, Davie came in and pulled Jeremiah off Jennifer. The three of them began to argue, and Davie hit Jennifer in the face and kicked her. Jeremiah pulled Davie away from Jennifer, but then he started beating Jennifer again. Jennifer testified that for about thirty to forty-five minutes, the two would alternate beating her and then pulling the other assailant away. Davie warned Jennifer not to tell anyone about the incident and stated that if Jeremiah went to jail, Davie would make sure that Jennifer and her family "paid" for it. Jeremiah then drove Jennifer to a gas station and dropped her off.

¶ 9 At the gas station, the attendant noticed something was wrong with Jennifer and notified an off-duty police officer who happened to be in the store. After speaking with Jennifer, the officer called an on-duty police officer. In Jennifer's statement to the on-duty officer, she described having been beaten only by Davie; out of fear of Davie's threats, she left Jeremiah out of her account. Later that day, she spoke with Jeremiah several times on the phone and told him what she had reported to the police.

¶ 10 The next day, Jeremiah told a police officer that he saw his mother beat Jennifer and that his mother told him to deny having been at the house the night of the incident.[2] However, at trial, Jeremiah denied seeing his mother beat Jennifer and testified that Jennifer had no injuries when he dropped her off at the gas station. He claimed to have made

---

**2.** This statement served as the basis for a second witness tampering charge against Davie, which the court found was not established beyond a reasonable doubt due to Jeremiah's lack of credibility.

his earlier statement at Jennifer's request and because he did not want to go to jail.

¶ 11 At trial, Davie denied beating Jennifer and said she believed Jeremiah had done it, although she had not seen him do it. However, when she was arrested, she had reported to the police that Jeremiah had not been there that night.

¶ 12 In its oral ruling, the trial court stated that, while aspects of Jennifer's trial testimony appeared to be inaccurate, she was nevertheless credible with respect to the issues central to the case. In contrast, the court found that both Jeremiah's and Davie's trial testimony lacked credibility. Therefore, the court found Davie guilty of assault.

¶ 13 The court sentenced Davie to concurrent sentences of zero-to-five years in prison and a fine of $5,000 on the witness tampering conviction, and one year in jail and a fine of $2,500 on the assault conviction. The court stayed the sentence subject to thirty-six months of successful probation. One of the terms of probation was that Davie serve 120 days in jail, ninety days of which would be stayed if Davie successfully served thirty days in jail in five-day increments. The court also ordered Davie to use only one physician and one pharmacist while on probation and to report her prescriptions to her probation officer. Davie completed the thirty-day sentence and filed a timely appeal challenging her conviction and sentence.

¶ 14 On appeal, Davie contends that the witness tampering statute is unconstitutionally overbroad and vague. "The overbreadth and vagueness doctrines are related yet distinct." *American Booksellers v. Webb,* 919 F.2d 1493, 1505 (11th Cir.1990). The overbreadth doctrine is rooted in the First Amendment while the vagueness doctrine is rooted in the Due Process Clauses of the Fifth and Fourteenth Amendments. *See United States v. Williams,* 553 U.S. 285, 292, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). A statute is overbroad "if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000).

¶ 15 The State counters that Davie's constitutional challenges are unpreserved. We agree. "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346; *see also State v. Brown,* 856 P.2d 358, 359–60 (Utah Ct. App.1993). "The issue must be raised to a level of consciousness that allows the trial court an adequate opportunity to address it." *State v. Worwood,* 2007 UT 47, ¶ 16, 164 P.3d 397 (citation and internal quotation marks omitted). "[T]he preservation rule applies to every claim, including constitutional questions. . . ." *Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. Therefore, "[w]hen a party raises an issue on appeal without having properly preserved the issue below, we require that the party articulate an appropriate justification for appellate review; specifically, the party must argue either plain error or exceptional circumstance[s]." *State v. Winfield,* 2006 UT 4, ¶ 14, 128 P.3d 1171 (citation and internal quotation marks omitted). The Utah Rules of Appellate Procedure thus require an appellant's brief to contain a "citation to the record showing that the issue was preserved in the trial court" or "a statement of grounds for seeking review of an issue not preserved in the trial court." Utah R.App. P. 24(a)(5)(A)-(B). Davie has done neither. Nor has our review of the record revealed that the claim was preserved.

¶ 16 The State also contends that Davie's constitutional challenge is inadequately briefed. Again, we agree. The Utah Rules of Appellate Procedure require an appellant's brief to "contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on." *Id.* R. 24(a)(9). "Briefs must contain reasoned analysis based upon relevant legal authority. An issue is inadequately briefed when the overall analysis of the

issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Sloan*, 2003 UT App 170, ¶ 13, 72 P.3d 138 (citation and internal quotation marks omitted). "Utah courts routinely decline to consider inadequately briefed arguments." *State v. Bryant*, 965 P.2d 539, 549 (Utah Ct.App.1998); *see, e.g., State v. Garner*, 2002 UT App 234, ¶ 13, 52 P.3d 467 (declining to address an argument where appellant quoted constitutional provisions and cited case law "but fail[ed] to clearly analyze 'what this authority requires and ... how the facts of [his] case satisfy these requirements'" (omission in original) (quoting *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998))).

¶ 17 Under these standards, Davie's brief is inadequate. Davie cites two cases relating to vagueness and one relating to overbreadth, but she fails to develop any meaningful analysis of her arguments. She does argue that the word "induce" is not adequately defined. However, the Utah Supreme Court squarely upheld an earlier, similar version of the witness tampering statute against a vagueness challenge to the word "induce." *See State v. Carlsen*, 638 P.2d 512, 515 (Utah 1981) (rejecting a claim that the word "induce" was vague as to whether it "applie[d] to verbal as well as physical interference with a witness"). Davie has not cited this case, let alone analyzed it. Because Davie's constitutional challenge is unpreserved and inadequately briefed, we will not reach the merits of her argument.

¶ 18 Davie next challenges her assault conviction, contending that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt. The crux of Davie's contention is that the trial court erred in finding Jennifer's testimony credible. When reviewing a challenge to the sufficiency of the evidence in a criminal bench trial, "we 'sustain the trial court's judgment unless it is against the clear weight of the evidence, or ... [we] reach[ ] a definite and firm conviction that a mistake has been made.'" *State v. Briggs*, 2008 UT 83, ¶ 11, 199 P.3d 935 (alterations in original) (quoting *State v. Goodman*, 763 P.2d 786, 786 (Utah 1988)). "Upon review, we accord deference to the trial court's ability and opportunity to evaluate credibility and demeanor." *Goodman*, 763 P.2d at 787; *see also State v. Pena*, 869 P.2d 932, 936 (Utah 1994) ("The judge of [the trial] court is therefore considered to be in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record."). "[B]ecause the trial court had the opportunity to view these witnesses and weigh their credibility, we defer to its findings unless the record demonstrates clear error." *State v. Nichols*, 2003 UT App 287, ¶ 27, 76 P.3d 1173 (citation and internal quotation marks omitted).

¶ 19 Davie argues that the trial court had no basis to believe Jennifer's testimony over Jeremiah's because each had given statements to police officers inconsistent with their trial testimony. In effect, Davie argues that the trial court should have believed Jeremiah over Jennifer. We find no reason to question the trial court's credibility determinations, especially given the deference with which we review such decisions.

¶ 20 The mere existence of inconsistencies is not a sufficient basis to question credibility determinations. *See Carlsen*, 638 P.2d at 514–15 ("The presentation of conflicting evidence does not preclude a finding of guilt beyond a reasonable doubt."). "In this case, the court, acting as the trier of fact in the absence of a jury, was authorized to determine the credibility of the witnesses and to believe or disbelieve any witness." *Id.* at 515. The trial court viewed the in-court testimony of all the witnesses and received evidence of prior inconsistent statements. Jennifer and Jeremiah gave explanations for their prior inconsistent statements, and the court considered the motivation each witness, including Davie, would have to lie. The trial court also considered how the testimony of these three witnesses fit with the testimony of other witnesses who testified at trial. Based on this evidence, and from the vantage point of having observed the demeanor of each witness, the trial court determined that Jennifer's trial testimony was credible. The court also expressly rejected Davie's claim that Jeremiah was solely responsible for the assault. The evidence is

sufficient to establish Davie's guilt beyond a reasonable doubt.

¶ 21 Finally, Davie contends that her sentence was unconstitutionally cruel and unusual. Davie acknowledges that her sentence represents a downward departure from that recommended by Adult Probation and Parole. Yet Davie argues that her specific circumstances rendered the sentence excessively harsh. Specifically, Davie argues that her health problems make any incarceration a significant health risk, pointing to a situation in the past where medical complications arose because of her incarceration. Davie also challenges the probation requirement that she use only one physician and one pharmacist, arguing that this restricts her access to needed medication and that this restriction is unrelated to the crimes for which she was sentenced. Therefore, Davie asks that the remaining jail time and restrictions on her receipt of medical care be stricken or modified.

¶ 22 The State argues that Davie's challenge to her sentence is unpreserved.[3] To the extent Davie challenges her sentence as unconstitutional, we agree. Before the trial court entered Davie's sentence, it asked Davie to address the impact of incarceration on her health. Both Davie and her attorney addressed this issue at length, and the trial court also sought input from the State as to the ability of the jail and prison to accommodate her medical needs. In the end, Davie verbally accepted the terms of her probation. In fact, Davie proposed one accommodation that the trial court ultimately adopted: allowing her to serve jail time in increments. Nowhere in this discussion did Davie argue that her sentence was unconstitutionally cruel and unusual.

¶ 23 When reviewing the conditions of her probation with her probation officer, Davie did claim that two provisions violated her "civil rights," specifically, the restrictions on her possession of alcohol and weapons in her home. However, Davie did not bring these objections to the attention of the trial court, and these objections do not serve as the basis of her challenge on appeal. "Even when an issue has been raised before the trial court ..., it is clear that [b]efore a party may advance [that] issue on appeal, the record must clearly show that it was timely presented to the trial court in a manner sufficient to obtain a ruling thereon." *State v. Hansen*, 2002 UT 114, ¶ 13, 61 P.3d 1062 (alterations in original) (emphasis, citation, and internal quotation marks omitted). Because Davie did not alert the trial court in such a way as to give the court an opportunity to rule on the constitutionality of the sentence and has not argued plain error or exceptional circumstances on appeal, we deem this challenge waived and do not address its merits.

¶ 24 To the extent Davie challenges her sentence as otherwise inappropriate, we agree with the State that Davie's challenge is inadequately briefed. Davie cites no authority for her claim that the conditions of probation must be directly related to the crimes for which she was sentenced. Nor does she articulate any other legal basis to challenge the medical restrictions. Davie's failure to cite and discuss any legal rules that might form the basis for her challenge effectively "shift[s] the burden of research and argument to the reviewing court," *see State v. Sloan*, 2003 UT App 170, ¶ 13, 72 P.3d 138 (citation and internal quotation marks omitted). Therefore, we do not address the merits of this claim.

---

**3.** The State also argues that Davie's challenge to her sentence is moot because Davie has completed her jail time. We disagree. "A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants." *State v. Lane*, 2009 UT 35, ¶ 18, 212 P.3d 529 (citation and internal quotation marks omitted). " '[A] criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.' " *Duran v. Morris*, 635

P.2d 43, 45 (Utah 1981) (quoting *Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). Davie was sentenced to zero-to-five years in prison and one year in jail. Although the sentence was stayed and Davie did complete the ordered jail time as part of her probation, the stay could yet be lifted should Davie fail to comply with other terms of her probation. Furthermore, the challenged medical restrictions are part of her thirty-six-month probation, which is still in effect.

¶ 25 In conclusion, we do not address Davie's constitutional challenge to her conviction for witness tampering because it is unpreserved and inadequately briefed. Davie's challenge to the sufficiency of the evidence for her assault conviction fails because Davie has provided no reason for this court to depart from the deference we grant the trial court to make credibility determinations. Finally, we do not address Davie's challenge to her sentence, because it is unpreserved and inadequately briefed.

¶ 26 Affirmed.

¶ 27 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and STEPHEN L. ROTH, Judge.