**2017 UT App 1**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DOUGLAS EWALD ISAACSON,
Appellant.

Memorandum Decision
No. 20150591-CA
Filed January 6, 2017

Third District Court, West Jordan Department
The Honorable William K. Kendall
No. 141400680

Nathalie S. Skibine and Heather J. Chesnut,
Attorneys for Appellant

Simarjit S. Gill and Colleen K. Magee, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGE GREGORY K. ORME concurred. JUDGE
J. FREDERIC VOROS JR. concurred in the result, with opinion.

CHRISTIANSEN, Judge:

¶1     Douglas Ewald Isaacson (Defendant) appeals his conviction for one count of carrying a loaded and concealed dangerous weapon, a class A misdemeanor.[1] *See* Utah Code Ann. § 76-10-504(2) (LexisNexis Supp. 2013). We affirm.

---

1. During the relevant time frame, Utah Code subsection 76-10-504(2) provided that "[a] person who carries a concealed dangerous weapon which is a loaded firearm in violation of

(continued…)

¶2     In October 2013, the Draper City police received a tip from a local library that Defendant was carrying a concealed weapon and that the library staff knew he did not have a concealed-carry permit.[2] While en route to the library, the responding officers learned that Defendant had left the library and was likely headed to a nearby senior center. The officers found Defendant in the senior center's cafeteria. Defendant admitted to the officers that he had a gun concealed inside his jacket, and he allowed one of the officers to remove the gun from his jacket. The gun was fully loaded.

¶3     At a bench trial, Defendant stipulated that he did not have a concealed-carry permit. According to Defendant, he believed he did not need a concealed-carry permit because he had "a Second Amendment right to bear arms."

¶4     Before the first witness was called to testify, Defendant indicated that he planned to call two "reputation or . . . character witnesses." The State objected, observing that the witnesses were not present at the time the offense occurred and that their testimony "would not be relevant to proving the case as far as any of the elements that the State need[ed] to prove since they were not present." Defendant indicated that the witnesses would be testifying as to his reputation for truthfulness and his "comprehension abilities and propensities related to the

_____

(…continued)
Subsection (1) is guilty of a class A misdemeanor." Utah Code Ann. § 76-10-504(2) (LexisNexis Supp. 2013).

2. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *State v. Davie*, 2011 UT App 380, ¶ 2 n.1, 264 P.3d 770 (citation and internal quotation marks omitted).

concealed carry permit law and also relating to carrying a weapon." The trial court reserved ruling on the issue.

¶5     One of the responding police officers testified for the State, and a body-camera video was introduced and admitted into evidence. The video showed that Defendant was carrying a concealed gun inside his jacket. Based on this evidence and the testimony presented at trial, the court found that the gun was fully loaded and could be fired "simply by pulling the trigger one time."

¶6     Defendant testified that he had taken the concealed-carry class twice but that he had never obtained a concealed-carry permit. He also testified that he did not have a holster to carry his gun. Defendant further testified regarding his limited finances, explaining that he had "economized" to purchase his gun and to pay for the concealed-carry classes.

¶7     After Defendant testified, he again asked to call the two witnesses to testify regarding his reputation for truthfulness. The trial court ruled that the witnesses could not testify because "there ha[d] been no attack on [Defendant's] reputation for truthfulness and so pursuant to the rule it would be hearsay to have any witness come in and testify further about [Defendant's] reputation for truthfulness." The court also ruled that further testimony concerning Defendant's "knowledge of needing a concealed weapons permit and his feeling on the law" was neither relevant nor admissible.

¶8     Ultimately, the trial court found Defendant guilty of carrying a loaded and concealed dangerous weapon, *see* Utah Code Ann. § 76-10-504(2) (LexisNexis Supp. 2013), and sentenced him to one year in jail. The court suspended Defendant's sentence, placed him on probation, ordered him to complete twenty-four hours of community service, and ordered him to pay a $100 recoupment fee. Defendant appeals.

¶9    On appeal, Defendant contends that "the court erred when it did not allow [him] to call two witnesses who would have testified about [his] character for truthfulness." We review a trial court's evidentiary rulings for an abuse of discretion and its interpretation of evidentiary rules for correctness. *State v. Alzaga*, 2015 UT App 133, ¶ 31, 352 P.3d 107.

¶10    Rule 608 of the Utah Rules of Evidence provides:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Utah R. Evid. 608(a).

¶11    Here, Defendant testified in his own defense. Defendant testified that he had paid $300 for his gun. He testified that he had twice taken the concealed-carry class but that he had never obtained a concealed-carry permit, even though he had "heard about the need to have a permit." Defendant further testified that it was difficult for him to save the money to take the classes and that he lived "paycheck to paycheck." According to Defendant, after he took the concealed-carry classes he "was saving at the time to get the extra 50 bucks" for a concealed-carry permit, but he was hoping the concealed-carry law would change.

¶12    The prosecution cross-examined Defendant on various aspects of his testimony. The prosecution asked Defendant about his "restricted income," and Defendant testified that he had been living on a Social Security-based restricted income for almost

fourteen years. The following exchange occurred during the prosecution's cross-examination of Defendant:

> Q. And after the previous weapon was stolen you were able to pay $300 to buy this new [gun]; is that correct?
>
> A. It took some time to save the money and he took it on time and—
>
> Q. But you did manage to scrape up $300 to buy the [gun]?
>
> A. Yep, took me some time, some months.
>
> Q. And then, . . . how much did you pay for . . . the first concealed carry class?
>
> A. I think 50 bucks, maybe 60. I don't know.
>
> Q. And you stated you had to take it again?
>
> A. Well, it runs out after six months or a year, I can't remember what the time limit was. So [the instructor] let me do it again for 10 bucks.
>
> . . . .
>
> Q. And you had been told that you needed to have a holster?
>
> A. Yeah, that was months earlier.
>
> . . . .
>
> Q. And you couldn't afford a holster at that time?
>
> A. No.

¶13    On redirect examination, defense counsel asked Defendant to further explain how he acquired the gun. Defendant testified that he had "basically economized" to purchase the gun and that it took "four or five months of economizing to buy the gun." According to Defendant, he "stopped going to [Utah] Jazz games," started eating at McDonald's "[i]nstead of going to [a sports bar]," and stopped going to movies. He also stated that it only took "a couple months of saving" to attend the classes.

¶14    On recross-examination, the prosecution asked Defendant about "how much it . . . cost to go to a Jazz game" and whether he purchased food at the games he attended. Defendant testified that it cost "$19 for the nose bleed [section]" but that he "almost never" paid that much and that he did not eat at the games. The prosecution also confirmed with Defendant that he had "economized" to purchase his gun and that it took four to five months "to get the money for that" and "a couple months" to get the $50 for the concealed-carry class. Defendant further testified that he thought it cost around $50 or $60 to get a concealed-carry permit in Utah, but he was not sure as to the exact amount.

¶15    Based on the foregoing, Defendant contends that "[t]he prosecution attacked [his] character for truthfulness when it cross-examined him concerning his finances after he testified that he could not afford a permit or a holster." We disagree.

¶16    We see no evidence of an attack upon Defendant's character for truthfulness. The prosecution did not suggest that Defendant was lying about his finances or, for that matter, that he was being untruthful about anything. Rather, the prosecution's cross-examination questions merely reiterated Defendant's responses to defense counsel's questions regarding his finances. The prosecution's questions also generally highlighted the fact that Defendant would often "economize[]" when he wanted to make a larger purchase and that he had not

done so in order to obtain a concealed-carry permit. In sum, the prosecution's questions fell well short of attacking Defendant's character for truthfulness.

¶17 Because the prosecution did not attack Defendant's reputation for truthfulness, we conclude that the trial court did not abuse its discretion in excluding the testimony of Defendant's proposed character witnesses.

¶18 Affirmed.

———————

VOROS, Judge (concurring in the result):

¶19 I concur in the result. I would affirm on the ground that Defendant's character for truthfulness was irrelevant, and thus that the exclusion of this proposed character witness was harmless, if not incriminating.

¶20 Defendant claims that "[t]he prosecution attacked [his] character for truthfulness when it cross-examined him concerning his finances after he testified that he could not afford a permit or a holster." But whether Defendant could afford a concealed-carry permit was irrelevant. The statute under which he was convicted exempts those "to whom a permit to carry a concealed firearm has been issued." Utah Code Ann. § 76-10-523(2) (LexisNexis Supp. 2013). It does not exempt those who cannot afford a permit or holster. *See id.* Accordingly, evidence that Defendant testified truthfully that he could not afford a permit would only have confirmed that he did not qualify for the statutory exemption. It would, in other words, have confirmed Defendant's character for truthfulness, but also his guilt.

———————