2017 UT App 89

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROY D. TAYLOR,
Appellant.

Opinion
No. 20150767-CA
Filed June 2, 2017

Fourth District Court, Heber Department
The Honorable Roger W. Griffin
No. 141500331

Corbin B. Gordon, Dan H. Matthews, and Jarom B.
Bangerter, Attorneys for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and JILL M. POHLMAN concurred.

ROTH, Judge:

¶1      Roy D. Taylor challenges the trial court's denial of his
motion to suppress evidence of drugs discovered during a
consent search of his car. The court admitted the evidence, and a
jury convicted Taylor of possession of a controlled substance
with intent to distribute and possession of drug paraphernalia.
We affirm.

¶2      In October 2014, Officer Paul Scott saw Taylor traveling
toward Heber City. Taylor and his car matched the description
given to police by a confidential informant who indicated Taylor
would be transporting methamphetamine. Scott then followed
behind Taylor and saw him commit a traffic violation by

following the car in front of him too closely. Scott pulled Taylor's car over for the violation. He later admitted that the stop was a pretext designed to give him an opportunity to follow up on the confidential informant's tip.

¶3     Officer Scott asked Taylor for his license and registration. Taylor had a friend in the passenger seat, so he separated the two for his safety by having Taylor stand by the front bumper of the police cruiser while the passenger remained in the stopped car. Scott then began checking Taylor's documentation, which took roughly "three to five minutes." While the records check was ongoing, two other officers, having learned of the stop over the radio, arrived on the scene. One of them spoke with Taylor and asked to search his car. Taylor consented. The search uncovered a glass pipe with residue and burn marks, a box of clear plastic bags, and a digital scale. The officers arrested Taylor and transported him to jail. They later discovered that he had stashed a bag of methamphetamine in the police car along the way.

¶4     The State charged Taylor with possession or use of a controlled substance with intent to distribute under Utah Code section 58-37-8(2)(a)(i) and possession of drug paraphernalia under section 58-37a-5(1). Taylor moved to suppress the drug evidence uncovered during the search on the alternative theories that either the stop was not supported by reasonable suspicion or Taylor's detention exceeded the permissible scope of the traffic stop. The State opposed the motion and the trial court held a hearing on the matter.

¶5     At the end of the hearing, the court stated that it found Officer Scott's "testimony [to be] credible." And based on that testimony, the court found "that the defendant [Taylor] was following too closely so that the stop was proper." The court then requested additional briefing to address a lingering legal question about the validity of pretext stops. The State briefed the issue, and Taylor's counsel conceded the State's position, namely that a traffic stop motivated by pretext is valid so long as a legal

basis for the stop exists. The court did not enter a formal order regarding the motion to suppress, but it is apparent that the motion was denied because the contested evidence was presented at trial. The jury found Taylor guilty as charged, and he timely appealed.

¶6    Taylor raises three arguments on appeal: (1) the stop of his vehicle was illegal under the Fourth Amendment to the United States Constitution because police "fabricated" the reason for the stop; (2) the police questioning and request for consent to search his vehicle "impermissibly broadened and extended and thus exceeded the scope of the stop" in violation of the Fourth Amendment; and (3) his trial counsel provided ineffective assistance during the suppression phase of his case.[1] "We review a trial court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact." *State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. "While the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case." *Id.* And "[w]hen a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must determine whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Tirado*, 2017 UT App 31, ¶ 10, 392 P.3d 926.

¶7    We begin by examining Taylor's Fourth Amendment claims. "[T]he touchstone of the Fourth Amendment is reasonableness," which "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (citation and internal quotation marks

---

1. Taylor also argues that the information police learned from the confidential informant did not create reasonable suspicion to stop his car. Because we conclude that the stop was independently justified based on a traffic violation we do not reach that question.

omitted). "To decide whether police conduct during a traffic stop is reasonable, we consider whether the stop was (1) 'justified at its inception' and (2) carried out in a manner 'reasonably related in scope to the circumstances [that] justified the interference in the first place.'" *State v. Martinez*, 2017 UT 26, ¶ 12 (alteration in original) (quoting *United States v. Sharpe*, 470 U.S. 675, 682 (1985)).

¶8 Taylor's first argument is that the stop was not justified at its inception. In essence, he asserts that Officer Scott wanted to search Taylor for drugs and, when he could not find a valid reason to stop Taylor, he made one up. Specifically, Taylor claims that Scott "followed [Taylor's] vehicle for a period of time and[,] finding no reason to pull him over, the officer fabricated an offense, claiming he could tell that [Taylor's] car was following too close to the vehicle ahead of him." In other words, Taylor alleges that Scott lied.

¶9 Taylor bases much of his legal position on our supreme court's holding in *State v. Lopez*, 873 P.2d 1127 (Utah 1994). In *Lopez*, the court noted that "an officer's subjective suspicions unrelated to the traffic violation for which he or she stops a defendant can be used by defense counsel to show that the officer fabricated the violation." *Id.* at 1138. The court explained that subjective intent exists on a sliding scale: "The more evidence that a detention was motivated by police suspicions unrelated to the traffic offense, the less credible the officer's assertion that the traffic offense occurred." *Id.* at 1138–39. Taylor essentially argues that, because Officer Scott admitted the stop was a pretext for a drug investigation based on the confidential informant's tip, the trial court should not have found his testimony about the legal basis for the stop credible.

¶10 Taylor's argument, however, runs headlong into the trial court's credibility finding. The trial judge stated on the record, "I think [Officer Scott's] testimony is credible, that the defendant was following too closely." That credibility determination poses a major hurdle for Taylor because "we accord deference to the

trial court's ability and opportunity to evaluate credibility and demeanor." *State v. Davie*, 2011 UT App 380, ¶ 18, 264 P.3d 770 (citation and internal quotation marks omitted). Indeed, "we defer to [the trial court's] findings unless the record demonstrates clear error." *Id.* (citation and internal quotation marks omitted). And the sliding scale for assessing officer credibility articulated in *Lopez* does not impinge upon this principle. *Lopez* explains that a trial court may be skeptical of police testimony related to pretext stops, not that appellate courts may be skeptical of a trial court's credibility determination. *See Lopez*, 873 P.2d at 1138–39.

¶11 Although it is clear that Taylor would like us to conduct a plenary review of the record in the hope that we might make a different credibility determination, we defer to the trial court's findings unless the record demonstrates clear error, *see Davie*, 2011 UT App 380, ¶ 18, which Taylor has not established. For instance, Taylor alleges that Officer Scott did not explain in detail how he was able to judge Taylor's following distance from his police cruiser, which was behind Taylor on the roadway. But Scott testified that Taylor's car was following "[c]loser" than "[a] car length away" from the car in front of him. Thus, Scott's conclusion that there had been a "following" violation was based on his own observations. Such relatively specific testimony was not simply a "vague representation[] . . . that Mr. Taylor had followed too close," as Taylor now asserts. And while it is true, as Taylor points out, that Scott did not remember whether the vehicle Taylor was following was a four door or a two door, he did remember that it was "[a] passenger car" rather than a motorcycle or truck. Finally, we note that, contrary to Taylor's assertion, Scott testified specifically about how long he observed Taylor's car following too closely: "it was probably half a mile, quarter mile." While the officer might have provided more detailed testimony in some respects, no objection was lodged. The testimony that he had personally observed a traffic violation was thus evidence on which the trial court could properly rely. *Cf. State v. Christensen*, 2014 UT App 166, ¶ 15, 331 P.3d 1128 (noting that even evidence with an allegedly weak

foundation, once admitted, is sufficient to support a finding of fact).

¶12   Even if we thought Officer Scott's testimony lacked concrete detail in a way that undermined his credibility, we are not at liberty to substitute our judgment on that topic for the trial court's. "Our role is not to reweigh the evidence, but to determine only if the appellant has demonstrated a lack of evidentiary support for the trial court's findings." *Utah Dep't of Transp. v. TBT Prop. Mgmt., Inc.*, 2015 UT App 211, ¶ 23, 357 P.3d 1032; *see also American Fork City v. Thayne*, 2012 UT App 130, ¶ 4, 279 P.3d 840 (per curiam) ("[A] challenge to the district court's credibility determination fails if a defendant has provided no reason for this court to depart from the deference we grant the trial court to make credibility determinations." (citation and internal quotation marks omitted)). Taylor has neither demonstrated a lack of evidentiary support for the trial court's findings nor persuaded us to depart from our ordinary deferential review. We therefore affirm the trial court's determination that Scott was credible and, with it, the court's resulting conclusion that the stop was justified at its inception. *See State v. Martinez*, 2017 UT 26, ¶ 12.

¶13   We next address Taylor's argument that the police request for permission to search his car "went beyond the scope of the traffic stop and was illegal under the Fourth Amendment." Specifically, Taylor alleges that "Scott delayed issuing the citation or warning for the alleged violation, thus allowing the other narcotics officer . . . to obtain consent to search the vehicle." Taylor, however, does not support his allegation of delay with any citations to the record.

¶14   What the record shows is this: Once Officer Scott had Taylor's license and registration information, it took "three to five minutes" for the police dispatcher to check the information and "come back with a clearance." When asked to confirm that the records check "wasn't immediate," Scott stated, "No, it takes time to—to check those files." During that time, two other

officers arrived on the scene and began talking to Taylor. Indeed, Scott testified that the other officers "had arrived prior to [him] receiving that information" from dispatch. And when asked directly if he had done "anything to stall that information [from] getting to [him]," Scott answered, "No, sir." Finally, Scott testified he had not talked with the other officers while he was waiting for dispatch and that, after dispatch cleared Taylor's information, "[he] was informed by [the other officer] that consent was given by [Taylor] for a search."[2]

¶15    It is settled law that a "seizure justified only by a police-observed traffic violation . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) (brackets, citation and internal quotation marks omitted). However, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *see also Illinois v. Caballes*, 543 U.S. 405, 407–08 (2005) (holding that, so long as a lawful seizure was not "prolonged beyond the time reasonably required to complete" the original reason for the detention, "the shift in purpose" "from a lawful traffic stop into a drug investigation" was not unlawful). The critical question, then, is not whether the officer's request for permission to search Taylor's vehicle was related to the purpose of the stop, but whether that question prolonged—i.e., added time to—the stop. *See Rodriguez*, 135 S. Ct. at 1616.

¶16    Given that the trial court found Officer Scott's testimony credible, as we have discussed, the evidence fully supports a conclusion that the duration of Taylor's detention was not extended by police questioning. After pulling Taylor over, Scott

---

2. Taylor concedes in his reply brief that "the officers were careful not to extend the duration" of the stop.

began the process of running a license and registration check. During the short time required to do so, other officers arrived. One officer, after checking to make sure Scott was "okay and safe," introduced himself to Taylor and "asked him if there was anything dangerous, illegal, of any kind in the vehicle." Taylor responded no, and then the officer "asked him if he minded if [the police] searched the vehicle." Taylor consented to that request before the records check was complete.[3]

¶17　The trial court thus correctly concluded that the duration of the stop was reasonable and the police did not measurably extend it—Taylor consented to the search before the original purpose of the traffic stop was complete. *See Johnson*, 555 U.S. at 333. And once consent was given, the search itself did not have independent constitutional significance. *See Muehler v. Mena*, 544 U.S. 93, 100–01 (2005) (holding that "mere police questioning" about immigration status during an otherwise lawful detention does not constitute "a discrete Fourth Amendment event" (citation and internal quotation marks omitted)); *Florida v. Bostick*, 501 U.S. 429, 434–35 (1991) (stating that, "[e]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual," including "request[ing] consent to search his or her luggage").

¶18　Finally, we turn to Taylor's contention that he received ineffective assistance of counsel during the suppression phase of his case. He argues that his counsel performed deficiently in four ways: (1) counsel's failure "to question Officer Scott on his testimony regarding the nature of the stop"; (2) counsel's failure "to question the officer regarding why other officers immediately appeared on the scene of a routine traffic stop"; (3) counsel's failure "to question about the anonymous tip"; and (4)

---

3. In his opening brief Taylor concedes this point, acknowledging that Officer Scott finished the records check "[a]t some point after the other narcotics officer had obtained consent."

counsel's failure "to respond to additional briefing by the State following the hearing on the Motion to Suppress."

¶19    To succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When counsel's "failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious . . . to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

¶20    Here, Taylor has offered no analysis designed to overcome the rule "that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. But even if we assume for argument's sake that defense counsel's performance was deficient, Taylor still has not persuaded us that he was prejudiced by it. Indeed, he does not explain what evidence would have come to light had counsel pursued the additional lines of questioning identified in his brief as examples of his counsel's deficiency. For instance, Taylor baldly asserts that counsel "left unexplored the facts that would have established [Scott's] credibility was completely lacking." But he does not even hint at what those facts might have been. Likewise, Taylor does not explain how the answers to questions like "why [he] allowed other officers to question the Defendant while he was running the background check" would have convinced the trial court that the stop was illegal had trial counsel asked them.

¶21    And finally, with regard to Taylor's claim that trial counsel was deficient in failing to file a brief after the suppression hearing, Taylor fails to acknowledge trial counsel's own explanation to the trial court. Counsel stated that he did not file a response to the State's supplemental briefing on pretext stops, essentially because he saw nothing to disagree with in the

State's position: "[T]hat's why I didn't file it. My research showed that . . . the law is pretty clear that the fact that [the stop] was a pretext does not preclude [the officer] from having a valid stop." Given that the law controlling pretext stops has been settled in Utah since 1994, *see State v. Lopez*, 873 P.2d 1127, 1137 (Utah 1994) (stating that "the Fourth Amendment simply does not require an officer's state of mind to perfectly correspond to his or her legally justified actions"), counsel's failure to engage with the State on that point could not have been prejudicial to Taylor's defense, *see State v. Edgar*, 2017 UT App 53, ¶ 10 ("[T]o establish a claim of ineffectiveness based on an oversight or misreading of law, a defendant bears the burden of demonstrating why, on the basis of the law in effect at the time of trial, his or her trial counsel's performance was deficient." (citation and internal quotation marks omitted)). Accordingly, Taylor has not demonstrated that his counsel was ineffective.

¶22 We thus conclude that neither the traffic stop nor the ensuing consent search violated Taylor's Fourth Amendment rights and that Taylor has not shown that he received ineffective assistance of counsel. Affirmed.

————