2018 UT App 52

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TY WILLIAM MCLEOD,
Appellant.

Opinion
No. 20151062-CA
Filed March 29, 2018

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 141908935

Alexandra S. McCallum, Attorney for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
GREGORY K. ORME and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1    Ty William McLeod appeals the district court's denial of his motion to suppress drug evidence discovered during a search incident to arrest. McLeod contends that the evidence should be excluded because the officer's subjective basis for the arrest was a mistaken belief that McLeod was the subject of an active arrest warrant. In denying the motion to suppress, the district court ruled that the arrest was objectively justified. Notwithstanding the officer's mistaken subjective basis for arrest, the officer's observation of a hand-to-hand transaction gave rise to probable cause to arrest McLeod for committing a drug crime. We affirm.

## BACKGROUND[1]

¶2 A Salt Lake City police officer was surveilling a high-crime area known for drug activity. The officer was stationed on the top of a parking structure, using binoculars to look for hand-to-hand drug transactions. As a nine-year veteran of the police force, the officer was familiar with the characteristics of such transactions. He had been involved in approximately one thousand drug-related stops and had completed multiple narcotics trainings. The officer testified at an evidentiary hearing that in his experience, when a hand-to-hand drug transaction occurs, a pedestrian will walk up to a potential drug dealer and engage in a short conversation. After the pedestrian pulls out money, the drug dealer will usually remove drugs from his or her mouth and hand them to the pedestrian. According to the officer, certain drugs are typically packaged in a "twist," which is a pinky-sized bag that has been twisted and then melted on the end to prevent breaking. The color of the twist varies based on the type of drug it contains.

¶3 Through his binoculars, the officer noticed a suspicious interaction about sixty-five to seventy yards away from his location. He watched as a man, later identified as McLeod, approached a second man on the street and handed him green paper, which appeared to be money. The second man then reached into his mouth, grabbed a black item that appeared to be a twist of heroin, and handed it to McLeod. McLeod immediately put the black twist into his pocket and continued walking.

---

1. "In reviewing the [district] court's ruling on a motion to suppress evidence, we recite the relevant facts in the light most favorable to the [district] court's findings." *State v. Navarro*, 2017 UT App 102, ¶ 2 n.1, 400 P.3d 1120 (citation and internal quotation marks omitted).

¶4     Believing he had witnessed a hand-to-hand drug transaction, the officer exited the parking structure and intercepted McLeod on the street. The officer immediately recognized McLeod as a suspect he had arrested four months earlier.[2] In connection with charges stemming from that prior arrest, the officer had appeared at McLeod's preliminary hearing twenty days earlier and had heard the court issue an arrest warrant when McLeod failed to appear. Unbeknownst to the officer, McLeod had appeared later that afternoon, and the court had recalled the warrant at that time.

¶5     Assuming that the warrant was still active, the officer arrested McLeod. He then conducted a search incident to arrest, which uncovered a syringe, heroin, and cocaine. When the officer later conducted a records check, he discovered that the warrant had been withdrawn.

¶6     The State charged McLeod with two counts of possession or use of a controlled substance, third degree felonies, and one count of possession of drug paraphernalia, a class B misdemeanor. McLeod moved to suppress the drug evidence, contending that the officer had neither probable cause to arrest McLeod for the alleged drug transaction nor a good-faith basis to arrest McLeod on a twenty-day-old warrant.

¶7     In denying the motion, the district court noted that "it is very unusual for a person to walk up to someone else on the street and give that person what appears to be money and then get something out of that person's mouth in return." The court determined that "a reasonably prudent person, especially with [the officer's] training and experience, would easily and reasonably believe he had witnessed a hand-to-hand drug

---

2. The prior arrest and search is addressed in the companion case of *State v. McLeod*, 2018 UT App 51, which we also decide today.

transaction." Because the district court concluded the hand-to-hand transaction gave rise to objective probable cause to arrest, it did not reach McLeod's argument that the officer lacked good faith when he arrested McLeod on a recalled warrant.

¶8    McLeod pled guilty to one count of possession or use of a controlled substance, a class A misdemeanor, preserving his right to appeal the district court's denial of his motion to suppress. *See* Utah R. Crim. P. 11(j). This appeal followed.

ISSUE AND STANDARD OF REVIEW

¶9    McLeod contends that the district court erred in denying his motion to suppress because the officer arrested him without probable cause to believe McLeod was engaged in unlawful drug activity, thereby tainting any evidence recovered during the search incident to arrest. Specifically, McLeod contends that given the distance from which the officer observed the hand-to-hand transaction and the uncertainty regarding the items exchanged, the officer's observations supported only reasonable suspicion to investigate, not probable cause to arrest.

¶10    "We review a [district] court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact." *State v. Taylor*, 2017 UT App 89, ¶ 6, 402 P.3d 790 (citation and internal quotation marks omitted). "While the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case." *Id.* (citation and internal quotation marks omitted).

ANALYSIS

¶11    A warrantless arrest is reasonable under the Fourth Amendment to the United States Constitution if the officer has

probable cause to believe that the suspect "has committed even a very minor criminal offense in [the officer's] presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause to justify an arrest means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). In evaluating whether probable cause existed, we "may consider an officer's particular experience and education." *State v. Lloyd*, 2011 UT App 323, ¶ 21, 263 P.3d 557 (citation and internal quotation marks omitted).

¶12 The officer in this case was an experienced narcotics officer who had participated in over one thousand drug-related stops, had been trained to identify drug packaging, and was familiar with the common characteristics of hand-to-hand transactions. The officer testified that he had been looking for hand-to-hand transactions in a high-crime area when he watched McLeod approach a man on the street and give him what appeared to be money. The officer believed it was money because, with the aid of binoculars, he could see green paper. The man then removed a small, black item from his mouth and gave it to McLeod, who immediately placed it in his pocket and departed. The officer testified that he initially stopped McLeod because he believed the black item the man removed from his mouth was a twist of a controlled substance.

¶13 Relying on *State v. Anderson*, 2013 UT App 272, 316 P.3d 949, McLeod contends that an officer's observation of a hand-to-hand exchange in an area known for drug trafficking supports only reasonable suspicion justifying an investigative detention. *Id.* ¶ 24. In *Anderson*, we were not asked to determine whether the circumstances that gave rise to reasonable suspicion may have also supported probable cause for an arrest. Indeed, we have found no Utah appellate court decisions addressing

whether and under what circumstances a hand-to-hand transaction may give rise to probable cause. But other jurisdictions have held that witnessing a hand-to-hand transaction, under circumstances suggestive of drug activity, may give rise to probable cause to arrest. *See State v. Caicedo*, 622 So. 2d 149, 150 (Fla. Dist. Ct. App. 1993) (determining probable cause existed where an officer patrolling in an area known for drug activity observed two men with prior drug arrests exchange money for a small unknown item that the defendant immediately placed into his mouth); *State v. Moore*, 853 A.2d 903, 907 (N.J. 2004) (determining probable cause existed where an experienced narcotics officer using binoculars observed several men exchange money for small unknown objects in an area known for drug trafficking); *People v. Spencer*, 46 N.Y.S.3d 74, 74 (App. Div. 2017) (determining probable cause existed where an experienced narcotics officer observed a known drug dealer exchange an unidentified object for money in a drug-prone location).

¶14 Here, under the totality of the circumstances, the district court correctly determined that the officer had probable cause to arrest McLeod based solely on his observations of the hand-to-hand transaction. First, McLeod did not simply engage in a hand-to-hand exchange—McLeod accepted and placed into his pocket a small, black item that another man had just removed from his mouth. The officer testified that it is common for drug dealers to "pull [drugs] out of their mouth." While it may be possible to imagine innocent explanations for this peculiar conduct, none is remotely as likely as the conclusion that McLeod had engaged in a hand-to-hand drug transaction. *See Caicedo*, 622 So. 2d at 150 ("An observation as to a known mode of transportation of drugs is a factor properly considered in a probable cause determination.").

¶15 Second, even though the officer observed the transaction from sixty-five to seventy yards away, he had an unobstructed

view, and with the aid of binoculars, he was able to see the color of the items exchanged. Specifically, he saw McLeod give green paper to the second man, and he saw the second man hand something small and black to McLeod. The indeterminate nature of these items does not negate a probable cause determination, because the officer's belief that McLeod took possession of a controlled substance "need not be characterized as a certainty." *State v. Griffith*, 2006 UT App 291, ¶ 7, 141 P.3d 602; *see also Texas v. Brown*, 460 U.S. 730, 742 (1983) (stating that probable cause "does not demand any showing that such a belief be correct or more likely true than false").

¶16    Finally, the exchange occurred in a high-crime area where the officer had previously observed many hand-to-hand transactions. While officers may not stop pedestrians for merely being present in a high-crime area, *see State v. Trujillo*, 739 P.2d 85, 89 (Utah Ct. App. 1987), the United States Supreme Court has noted that "the fact that the stop occurred in a 'high-crime area' [is] among the relevant contextual considerations in a *Terry* analysis," *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *see also Terry v. Ohio*, 392 U.S. 1 (1968). And courts have similarly reasoned that a location's reputation for being a high-crime area is a relevant factor in determining whether there was probable cause to arrest after observing a hand-to-hand transaction. *See Caicedo*, 622 So. 2d at 150; *Moore*, 853 A.2d at 907; *Spencer*, 46 N.Y.S.3d at 74.

¶17    We conclude that under the facts of this case, it was objectively reasonable for an experienced narcotics officer to believe that McLeod had committed an offense in his presence, giving rise to probable cause to arrest. The officer's subjective reason for arresting McLeod—the mistaken belief that there was an outstanding warrant for his arrest—does not undermine the district court's conclusion that the arrest was nevertheless constitutional. *See Devenpeck v. Alford*, 543 U.S. 146, 155 (2004) (explaining that an officer's subjective reason for making an

arrest is "no basis for invalidating an [otherwise lawful] arrest"). Accordingly, we do not reach McLeod's contention that the officer's reliance on a recalled warrant was objectively unreasonable. Because the officer had probable cause to arrest McLeod after witnessing a hand-to-hand transaction, McLeod's arrest was lawful under the Fourth Amendment and there is no basis to exclude the evidence obtained during the subsequent search. *See State v. Harker*, 2010 UT 56, ¶ 19, 240 P.3d 780 ("Because arrests based on probable cause are 'lawful' under the Fourth Amendment, the evidence obtained in a search incident to such an arrest is not excluded.").

¶18   Affirmed.

_____