2016 UT App 131

## THE UTAH COURT OF APPEALS

JOSE LUIS ORTEGA,
Appellee and Cross-Appellant,

*v.*

RIDGEWOOD ESTATES LLC, HOUSING FINANCIAL
SERVICES INC., AND FRANZ FISCHER,
Appellants and Cross-appellees.

Opinion
No. 20140876-CA
Filed June 23, 2016

Second District Court, Farmington Department
The Honorable John R. Morris
No. 120700321

M. Darin Hammond, Attorney for Appellants

Gordon A. Madsen and Robert C. Cummings,
Attorneys for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES KATE A. TOOMEY and SENIOR JUDGE PAMELA T.
GREENWOOD concurred. [1]

VOROS, Judge:

¶1     Ridgewood Estates LLC, Housing Financial Services Inc.,
and Franz Fischer (collectively, Defendants) appeal from the
district court's judgment awarding Jose Luis Ortega title to two
mobile homes, attorney fees, and punitive damages. Ortega
cross-appeals, seeking damages for conversion of his mobile

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

homes and increased punitive damages. We affirm the district court in all respects.

BACKGROUND

¶2    This dispute arose from Ortega's purchase of two mobile homes located in Ridgewood Estates Mobile Home Park.[2]

¶3    Ortega is in the business of buying and selling mobile homes. In September 2011, he purchased a mobile home located at space 62 inside the Park (Home 62). He also obtained a certificate of title for the mobile home. Ortega notified Ridgewood of his purchase and, in accordance with Ridgewood policy, submitted a residency application with Ridgewood. Ridgewood denied Ortega's residency application. Although the parties had not signed a lease or other agreement, Ortega paid, and Ridgewood accepted, rental payments for the space occupied by Home 62 until February 2012. But Ortega paid no late fees or security deposit.

¶4    In December 2011, Ortega purchased a second mobile home, this one located at space 47 inside the Park (Home 47). Ortega informed Ridgewood of the purchase. As before, although Ortega and Ridgewood had not signed a lease or other agreement, Ortega paid, and Ridgewood accepted, rental payments on the space occupied by Home 47 until February 2012. And again Ortega paid no late fees or security deposit. He did, however, pay property taxes on both Home 47 and Home 62 in February 2012. Both homes have remained unoccupied at the Park since Ortega's purchases.

¶5    On January 4, 2012, Ridgewood served Ortega with a Landlord's Notice of Trespass and a Five-Day Notice to

---

2. Although they are both run by one company, we refer to the physical mobile home park as "the Park" and the management company that oversees park operations as "Ridgewood."

Terminate Tenancy at Will for both mobile homes. Ridgewood served the notice in accordance with Utah's Unlawful Detainer statute. *See* Utah Code Ann. § 78B-6-802 (LexisNexis 2012). The following month, Ridgewood's property manager, Staci Williams, and Ridgewood's owner, Franz Fischer, notified Ortega that he would not be permitted to remove the mobile homes from the Park until he paid all outstanding late fees and service charges, including those accrued by the homes' prior owners. Layton Police also served Ortega with a trespass warning stating that he would not be allowed on the property. Despite Ridgewood's prohibition, Ortega attempted to remove the homes a few days later. At Fischer's direction, Ortega was prevented from moving the homes. A Layton police officer and Williams told Ortega to leave the property due to the trespass warning. Ridgewood posted a Five-Day Notice to Terminate Tenancy at Will on each mobile home at the direction of Fischer. Ortega did not respond.

¶6      Ridgewood then mailed Ortega a letter claiming title to both mobile homes. Four days later, Williams applied with the Utah Division of Motor Vehicles for titles to both mobile homes. She applied on behalf of Ridgewood's parent corporation, Housing Financial Services (HFS), which Fischer owned and operated. On both applications, Williams asserted that the homes had been sold contrary to applicable Ridgewood policies, that the homes were abandoned, and that unpaid rent was due. The Utah Division of Motor Vehicles issued HFS a Certificate of Title for Home 47 but took no action on Home 62.

¶7      Ortega sued Defendants and the Utah Division of Motor Vehicles for quiet title to both homes and requested damages under slander of title and other theories.[3] Ridgewood counterclaimed for unlawful detainer and unjust enrichment. On

---

3. The Utah Division of Motor Vehicles was involved only to determine who held title to each home and is not a party to this appeal.

cross-motions for summary judgment, the district court dismissed Ridgewood's unlawful detainer claim. The district court reasoned that because Ortega had paid rent for the homes, he was entitled to receive a 15-day notice to quit under Utah's Mobile Home Park Residency Act (Mobile Home Act), *see* Utah Code Ann. § 57-16-1 (LexisNexis 2010), rather than the 5-day notice under Utah's Unlawful Detainer statute that he actually received, *see* Utah Code Ann. § 78B-6-802 (LexisNexis 2012).

¶8 The district court denied the parties' remaining motions and bifurcated the case to try liability and damages separately. Following the liability phase, the court ruled that Ortega owned the mobile homes, that Ridgewood had converted the mobile homes, and that Ridgewood had prevented Ortega from removing the mobile homes. The court found some or all of the Defendants liable for conversion and slander of title.

¶9 After the damages phase, the district court ruled both that attorney fees were recoverable as special damages in a slander of title case and that Ortega's attorney fees were reasonable. But it also ruled that lost profits, not lost rental income, represented the proper measure of damages for Ridgewood's conversion. No evidence of lost profits had been presented at trial. Furthermore, even if lost rental income were used, the district court ruled, the record lacked credible testimony establishing the amount of lost rents.

¶10 After both phases of trial, the district court quieted title to both mobile homes in Ortega, directed the Utah Division of Motor Vehicles to issue Ortega title to Home 47, and ordered Ortega to remove both homes from the Park. The court also awarded Ortega $30,375 in attorney fees as special damages for slander of title and $1,000 in punitive damages against HFS and Fischer. And the court awarded Ortega, as the "prevailing party," attorney fees in the amount of $11,100 against Ridgewood under the Mobile Home Act and the Unlawful Detainer statute. Both parties appeal.

ANALYSIS

I. Defendants' Appeal

¶11 Defendants present six issues on appeal. We consider them in turn, stating the applicable standard of review for each claim that has been "properly preserved, framed and briefed." *See Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 32, 297 P.3d 38.

A. Mobile Home Act

¶12 Defendants first contend that the district court erred in applying the Mobile Home Act instead of the Unlawful Detainer statute. The latter applies, Defendants argue, because Ortega did not qualify as a "resident" under the Mobile Home Act. He did not qualify, they reason, because he (1) never resided at Ridgewood and (2) did not have a rental or lease agreement with Ridgewood. The distinction matters because Defendants served Ortega with a 5-day notice to quit, which complied with the Unlawful Detainer statute but not with the Mobile Home Act.

¶13 On summary judgment the district court ruled that despite having no lease or rental agreement with Ridgewood, Ortega qualified as a resident under the Mobile Home Act. The court based this conclusion on the plain language of the Mobile Home Act and on the fact that after purchasing the mobile homes, Ortega tendered, and Ridgewood accepted, rental payments for both homes' spaces. We review both the grant of summary judgment and the interpretation of a statute for correctness. *Blackner v. Department of Transp.*, 2002 UT 44, ¶ 8, 48 P.3d 949.

¶14 "Unlawful detainer by an owner resident of a mobile home is determined under Title 57, Chapter 16, Mobile Home Park Residency Act." Utah Code Ann. § 78B-6-802(3) (LexisNexis 2012). If a person qualifies as an "owner resident" under the Mobile Home Act, the mobile home park is "required to comply with the notice provisions of the [Mobile Home Act], *regardless of*

*the existence of a lease.*" *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 21, 48 P.3d 968 (emphasis added).[4] Defendants do

---

4. Defendants assert that the emphasized text from the supreme court's *Brookside* opinion lacks precedential value because the mobile home owner in that case had a lease. *See Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 21, 48 P.3d 968. However, our supreme court has held that "lower courts are obliged to follow . . . any 'judicial dicta' that may be announced by the higher court." *State v. Menzies*, 889 P.2d 393, 399 n.3 (Utah 1994).

"Dicta normally comes in two varieties: obiter dicta and judicial dicta." *People v. Williams*, 788 N.E.2d 1126, 1136 (Ill. 2003) (emphasis omitted); *see also* Marc McAllister, *Dicta Redefined*, 47 Willamette L. Rev. 161, 167 (2011) (stating that a minority of courts distinguish between "judicial dicta" and "obiter dicta"). Both terms refer to judicial statements that are unnecessary to the resolution of the case. Obiter dicta "refers to a remark or expression of opinion that a court uttered as an aside," such as a "statement made by a court for use in argument, illustration, analogy or suggestion." *Exelon Corp. v. Department of Revenue*, 917 N.E.2d 899, 907 (Ill. 2009) (citations and internal quotation marks omitted). In contrast, judicial dicta refers to "an expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court." *Id.* (citation, emphasis, and internal quotation marks omitted). An example of judicial dicta is a statement "deliberately made for the guidance of the bench and bar upon a point of statutory construction not theretofore considered by the Supreme Court." *Ex parte Harrison*, 741 S.W.2d 607, 609 (Tex. Ct. App. 1987) (citation and internal quotation marks omitted). The Utah Supreme Court's statement in *Menzies* that lower courts are obliged to follow "judicial dicta" from a higher court presupposes the obiter dicta/judicial dicta distinction and itself appears to be an example of judicial dicta.

As for the case before us, our supreme court's statement in *Brookside*—that a mobile home park must comply with the notice provisions of the Mobile Home Act if a person qualifies as

(continued…)

not dispute that Ortega qualified as an "owner." They question only whether he qualified as a "resident."

¶15 The Mobile Home Act defines "resident" as "an individual who leases or rents space in a mobile home park." Utah Code Ann. § 57-16-3(8) (LexisNexis 2010). The definition does not require physical occupation of the mobile home. Defendants acknowledge that Ortega paid rent on homes 47 and 62 but argue that he did not "rent[] space" in Ridgewood, because he "refused to pay late fees" and did not "pay any security deposit." However, Defendants have not shown that the term "rents space" as used in the Mobile Home Act requires payment of late fees and a security deposit in addition to rent, nor can we see why it should.

¶16 Moreover, the notices Defendants served on Ortega in January 2012 do not accuse him of failure to pay rent, late fees, or security deposits. Rather, they assert that he purchased the mobile homes without pre-registering as required by section 57-16-4(4) (now section 57-16-4(5)(b)) of the Mobile Home Act. The district court concluded that such a violation would not support an eviction under the Unlawful Detainer statute. *See* Utah Code Ann. § 78B-6-802(3) (LexisNexis 2012); *id.* § 57-16-6(3)(a) (2010). Defendants do not attempt to explain why this conclusion constitutes legal error.

¶17 Finally, Defendants assert that their restrictive endorsement of Ortega's checks (stating "accepting this payment does not imply residency into the park") refutes the conclusion that Ortega qualified as a resident under the Mobile Home Act.

---

(…continued)

an owner resident under the Act "regardless of the existence of a lease"—appears to have been deliberately made for the guidance of the bench and bar upon a point of statutory construction. *See* 2002 UT 48, ¶ 21, 48 P.3d 968. We thus conclude that it qualifies as judicial dicta, and we follow it.

But they offer no legal authority or analysis showing that this unilateral assertion overrides the provisions of the Mobile Home Act.

¶18    In sum, the district court correctly ruled that Ortega qualified as a resident under the Mobile Home Act, which consequently governed Defendants' attempts to evict him.

B.    Ridgewood's Right to Remove

¶19    Defendants next contend that the district court erred in failing to enforce Ridgewood's right to remove the mobile homes purchased by Ortega. Defendants rely on section 57-16-4(5)(b)(iv) of the Mobile Home Act. That section states that a mobile home park "may unconditionally refuse to approve any purchaser of a mobile home who does not register before purchasing the mobile home." *Id.* § 57-16-4(5)(b)(iv). Ortega did not register with Ridgewood before purchasing the mobile homes.

¶20    Defendants do not specify which ruling of the district court this claim challenges on appeal. They also do not identify where in the record they preserved this claim or where the district court ruled on the applicability of section 57-16-4(5)(b)(iv). *Seamons v. Brandley*, 2011 UT App 434, ¶ 3, 268 P.3d 195 ("The Utah Rules of Appellate Procedure also require that the appellant's brief provide a citation to the paginated record demonstrating where the issue was preserved, or demonstrate that the unpreserved issue meets an exception to the preservation rule."). Accordingly, we reject this claim as unpreserved. *See Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 ("Generally, in order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (citation and internal quotation marks omitted)).

C.      Unjust Enrichment

¶21    Defendants next contend that the district court erred in denying Ridgewood damages on its claim for unjust enrichment. This claim is based on the fact that the two mobile homes sat on spaces 47 and 62 from February 2012 through September 2014, during which period Ortega paid no rent.

¶22    The district court found all the elements of unjust enrichment satisfied. But it also ruled that equity required that Ridgewood's recovery be cut off on February 17, 2012. On that date, the court found, Ortega had "attempted to prepare the mobile homes for removal but was prevented from doing so by Ridgewood Estates," which had a trespass warning served on him. The court also found that on March 1, 2012, Ridgewood claimed title to the mobile homes based on the prior owners' lease term violations.

¶23    Defendants "do not challenge [these] factual findings. Therefore, we are bound by them." *See Department of Human Services ex rel. Parker v. Irizarry*, 945 P.2d 676, 684 (Utah 1997). Indeed, Defendants do not even acknowledge them. "Because [Defendants] fail[] to address the basis of the district court's ruling, we reject this challenge." *See Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375.

D.      Unlawful Detainer

¶24    Defendants next contend that the district court erred in dismissing their unlawful detainer action rather than granting their motion to amend their counterclaim. They sought to amend their complaint based on a new notice to pay rent or quit served on Ortega well after the complaint was filed.

¶25    This claim is not adequately briefed. An appellant's brief must contain "the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). To comply with this rule, briefs "must contain

reasoned analysis based on relevant legal authority." *State v. Davie*, 2011 UT App 380, ¶ 16, 264 P.3d 770 (citation and internal quotation marks omitted). "An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *Id.* (citation and internal quotation marks omitted). And "[a]n inadequately briefed claim is by definition insufficient to discharge an appellant's burden to demonstrate trial court error." *Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885. Here, the Defendants' brief refers to the Mobile Home Act, but does not cite, discuss, or analyze any rules or judicial opinions governing the scope of a district court's authority to set aside a dismissal or to grant leave to amend a complaint. The brief asserts that the district court acted "wrongly" but identifies no authority for distinguishing between right and wrong action in this context. Accordingly, this claim on appeal fails.

E.      Slander of Title

¶26     Defendants next contend that the district court's slander of title judgment lacks adequate findings of fact. Specifically, they assert that the court did not identify a false statement, which is a necessary element of the claim. *See Neff v. Neff*, 2011 UT 6, ¶ 79, 247 P.3d 380.[5]

¶27     This claim is unpreserved. To preserve an appellate challenge to the adequacy of district court findings, an appellant must first have raised the objection in the district court with sufficient clarity to alert the district court to the alleged inadequacy. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56,

---

5. "A claim for slander of title requires proof of four elements: (1) publication of a slanderous statement, (2) the statement must be false, (3) the statement must be made with malice, and (4) the statement must cause special damages to the plaintiff." *Neff v. Neff*, 2011 UT 6, ¶ 79, 247 P.3d 380.

99 P.3d 801. "Lest an appellant overlook this requirement on appeal, the appellate rules require the appellant's opening brief to include, with each issue statement, a 'citation to the record showing that the issue was preserved in the trial court' or 'a statement of grounds for seeking review of an issue not preserved in the trial court.'" *Cook v. Cook*, 2013 UT App 57, ¶ 3, 298 P.3d 700 (quoting Utah R. App. P. 24(a)(5)). Defendants' opening brief does not comply with this requirement. Nor does the argument section of their brief contain citations to the record showing that the claim was actually preserved. *See Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 101, 299 P.3d 990 (exercising discretion to address the merits of a claim despite appellant's noncompliance with rule 24(a)(5)(A) because the argument section of the opening brief contained citations showing that the claim was in fact preserved). Moreover, our review of the record suggests that this claim was in fact not preserved; although proposed findings and conclusions were served on Defendants, they did not object to them.

¶28    In any event, we see no flaw in the court's findings. HFS sought to acquire title to the two mobile homes on the ground that they had been abandoned. The district court found that "no reasonable evidence existed that either mobile home was abandoned and therefore neither Ridgewood Estates nor [HFS] had a claim of title to the mobile homes based upon abandonment." This was so, the court found, because "Ridgewood Estates knew of and acknowledged plaintiff's purchase of the mobile homes, dealt with plaintiff as an owner in negotiations concerning the mobile homes, and accepted rental payments from him through February 2012." The court also found that Ridgewood had "effectively prevented the mobile homes from being occupied during the relevant time frame which precludes an abandonment claim." Indeed, the court found that Ortega "attempted to prepare the mobile homes for removal, but was prevented from doing so by Ridgewood Estates . . . and was served with a Trespass Warning by the Layton Police Department." Contrary to Defendants' contention,

the district court entered ample findings showing that HFS had falsely claimed the mobile homes had been abandoned.

F.     Attorney Fees as Special Damages

¶29     Finally, Defendants contend that the district court erred as a matter of law in awarding special damages to Ortega in the amount of his attorney fees for the slander of title judgment. The district court's interpretation of case law presents a question of law, which we review for correctness. *Meguerditchian v. Smith*, 2012 UT App 176, ¶ 9, 284 P.3d 658.

¶30     The district court ruled that, under prevailing law, Ortega could recover attorney fees as special damages for slander of title. On appeal, Defendants acknowledge that in *Neff v. Neff* the Utah Supreme Court held that "[i]n slander of title cases, attorney fees may be recovered as special damages if the fees are reasonably necessary to remedy the disparagement of the plaintiff's title." 2011 UT 6, ¶ 79, 247 P.3d 380. Defendants contend that this should not be the rule. But we are bound by vertical stare decisis to "follow strictly" the decisions rendered by the Utah Supreme Court. *See State v. Menzies*, 889 P.2d 393, 399 n.3 (Utah 1994). We accordingly decline Defendants' invitation to overrule *Neff*.

¶31     Defendants also contend that Ortega did not properly allocate his attorney fees. This contention is inadequately briefed. Rule 24(a)(9) of the Utah Rules of Appellate Procedure mandates that a party's brief "shall contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and *parts of the record* relied on." Utah R. App. P. 24(a)(9) (emphasis added). Defendants' discussion of this point contains no citations to the record. In addition, the discussion is couched in generalized criticisms—for example, that counsel's allocation was "completed with a biased viewpoint after the fact"—untethered to specific record facts. In short, the "overall analysis of the issue is so lacking as to shift the burden of research and argument to

the reviewing court." *State v. Davie*, 2011 UT App 380, ¶ 16, 264 P.3d 770 (citation and internal quotation marks omitted).

¶32 Finally, Defendants contend that the fees were unreasonable in comparison to the value of the mobile homes at issue. Again, the contention lacks adequate briefing. Defendants' discussion of this point contains no "citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). Thus, we affirm the district court's award of special damages in the amount of Ortega's attorney fees.

## II. Ortega's Cross-Appeal

¶33 Ortega presents three contentions on cross-appeal. We consider them in turn, stating the applicable standard of review in connection with each.

### A. Conversion Damages

¶34 Ortega, as cross-appellant, first contends that the district court erred in failing to award him reasonable damages on his conversion claim.

¶35 The district court ruled that Defendants had tortiously converted the mobile homes, but it awarded no damages. It rejected lost rental income as a suitable measure of damages on the ground that Ortega's business involved buying and selling mobile homes, not renting them. Accordingly, the court reasoned, the appropriate measure of damages was the "loss of any profit that he may have obtained by selling the home or by renting it to own." Furthermore, the court ruled that even if lost rental income were the appropriate measure of damages, Ortega presented no credible testimony establishing a rental amount.

¶36 On appeal, Ortega contends that lost rental income is the appropriate measure of damages and that he and another witness presented credible and uncontroverted testimony that his lost rental income was between $300 and $600 per month for each unit.

¶37 "Whether the district court applied the correct rule for measuring damages is a question of law that we review for correctness." *Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 25, 96 P.3d 893. "Whether the amount awarded by the district court was supported by the evidence is a determination of fact that may be reversed on appeal only if clearly erroneous." *Id.*

¶38 "To the extent possible, the fundamental purpose of compensatory damages is to place the plaintiff in the same position he would have occupied had the tort not been committed." *Id.* ¶ 26. "Generally, the measure for damages in a conversion action is the value of the converted property at the time of conversion, plus interest." *Id.* But "where the defendant returns the converted property," "damages based on the value of the plaintiff's loss of use of the converted property may be appropriate." *Id.* ¶ 28.

¶39 Ortega asserts that the Utah Supreme Court held in *Mahana* "that reasonable rental value is the proper measure of damage where the item was returned to the plaintiff or where evidence is lacking of market value." That is not quite accurate. *Mahana* involved a converted truck that was later returned. In determining compensatory damages, the district court "settled on the retail rental value of small cars" such as the courtesy rental cars the plaintiff had been driving during the period of the conversion. *Id.* ¶ 32. The defendant argued that this measure of damages was "clearly erroneous" and would result in an "inequitable windfall for the plaintiff" because this rental value more than doubled the price the plaintiff had originally paid for the converted truck. *Id.* ¶¶ 33–34. The supreme court rejected this claim, seeing "no clear error in the fact that the compensatory award exceed[ed] the purchase price of the truck." *Id.* ¶ 34. Thus, the supreme court concluded that the law *permitted* the trial court to use the reasonable rental value of a replacement vehicle as the measure of compensatory damages in that circumstance, not that the law *required* it to do so.

¶40 Here, although Ortega seeks to recover the reasonable rental value of the mobile homes during the period of the

conversion, he acknowledges that he was not in the business of renting mobile homes and does not assert that, but for the conversion, he would have rented the mobile homes. Accordingly, we do not agree that the district court erred in rejecting Ortega's claim that awarding him the reasonable rental value of the mobile homes would have placed him "in the same position he would have occupied had the tort not been committed." *Id.* ¶ 26.

B.    Punitive Damages

¶41    Ortega next contends that the district court erred in failing to award him adequate punitive damages. On the slander of title claim, the district court awarded Ortega special damages of $30,375 (for attorney fees) and "nominal" punitive damages of $1,000 against HFS and Fischer. Ortega complains (1) that no punitive damages were awarded against Ridgewood because no compensatory damages were awarded, and (2) that the court based its determination of damages against HFS and Fischer on compensatory damages of only "a little over $40,000."

¶42    A punitive damage award must comply with both statutory and common law standards. *See Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶¶ 27–30, 82 P.3d 1064 (citing *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 801–03 (Utah 1991)). First, under our punitive damages statute, punitive damages generally may be awarded only if clear and convincing evidence establishes "that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." Utah Code Ann. § 78B-8-201(1)(a) (LexisNexis 2012). And in *Crookston,* our supreme court identified seven factors that must be considered in awarding punitive damages under our common law standards:

> (i) the relative wealth of the defendant; (ii) the nature of the alleged misconduct; (iii) the facts and circumstances surrounding such conduct; (iv) the

effect thereof on the lives of the plaintiff and others; (v) the probability of future recurrence of the misconduct; (vi) the relationship of the parties; and (vii) the amount of actual damages awarded.

817 P.2d at 808.

¶43     In determining the punitive damage award here, the district court made findings on both the statutory and common law factors. Under the punitive damages statute, the district court did not find that HFS and Fischer's conduct was malicious, but it did find by clear and convincing evidence that HFS and Fischer's conduct was willful and manifested a knowing and reckless indifference toward and disregard of Ortega's rights. The court also entered findings on each of the *Crookston* factors. It found little or no evidence of factors (1), (4), or (5). Under factors (3) and (6), it considered whether Ortega had come to court with "clean hands."

¶44     On appeal, Ortega addresses neither the statutory prerequisites for punitive damages nor the *Crookston* factors. Nor does he contend that the district court abused its discretion. He makes only two arguments. Both present questions of law, which we review for correctness. *Meguerditchian v. Smith*, 2012 UT App 176, ¶ 9, 284 P.3d 658.

¶45     First, Ortega argues that the court committed an error of law in not awarding punitive damages against Ridgewood as well as HFS and Fischer. He cites a number of findings and conclusions of the district court that he claims require the punitive damage award be extended to Ridgewood. Ortega rightly observes that Ridgewood participated in the conduct underlying this lawsuit. The court ruled that "Ridgewood Estates, [HFS], and Franz Fischer converted the mobile homes." But it ruled that only "[HFS] and Franz Fischer slandered plaintiff's title to the mobile homes." And because the district court awarded punitive damages only in connection with the slander of title claim, it reasonably awarded punitive damages

only against those parties—HFS and Fischer—who had slandered plaintiff's title.

¶46 Second, Ortega argues that the court committed an error of law in concluding that Ortega came to court with unclean hands. He asserts that it "appears" that the reason the court did not award more punitive damages "was that it felt that plaintiff did not come before the court with 'clean hands.'" Even assuming that the court mistakenly concluded that Ortega lacked clean hands in this dispute, Ortega has not shown on appeal that the mistake depressed the ultimate punitive damage award. He has not claimed that the district court abused its discretion nor has he addressed the statutory standard or the common law factors for punitive damages, including deterrence or ability to pay. And these two factors loom large: "because the principal purpose of punitive sanctions is deterrence, the offender's ability to pay must be considered." *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1259 (10th Cir. 2015). A claim of error on appeal, like this one, that fails to address the legal standards governing the determination of punitive damages, falls short of demonstrating district court error. In short, Ortega has not demonstrated that, even excluding any consideration of his relative blame, the facts of this case compel a higher punitive damage award. Therefore, we affirm the district court's award of punitive damages and decline to alter the amount.[6]

C.    Attorney Fees on Appeal

¶47 Finally, Ortega seeks attorney fees on appeal. Ortega argues that he is entitled to attorney fees as the prevailing party in Defendants' appeal. *See* Utah Code Ann. §§ 57-16-8 (LexisNexis 2010), 57-16-15(1)(d) (Supp. 2015). Defendants

---

6. However, we note that where, as here, a plaintiff is "not awarded damages on equitable grounds, the district court err[s] in denying . . . punitive damages based on unclean hands." *Hill v. Estate of Allred*, 2009 UT 28, ¶ 22, 216 P.3d 929.

respond that "[a]ttorney's fees should not be awarded to [Ortega] in this action because the court determined that [Ortega] had unclean hands."

¶48 Relying on sections 57-16-8 and 57-16-15(1)(d) of the Mobile Home Act and sections 78B-6-811(3) and 808(2) of the Unlawful Detainer statute, the district court awarded Ortega $11,100 in attorney fees as the prevailing party.[7] The portion of the Mobile Home Act cited by the district court states that in an eviction proceeding under the Mobile Home Act "the court shall order court costs and attorney fees to the prevailing party," Utah Code Ann. § 57-16-15(1)(d) (Supp. 2015), and that "[u]pon final termination of the issues between the parties . . . [t]he prevailing party is also entitled to court costs and reasonable attorney's fees." *Id.* § 57-16-8 (2010).

¶49 Here, Ortega brought his original action to defend against the Notices to Quit posted by Ridgewood—a type of eviction proceeding. Although Ridgewood claimed to have proceeded under the Unlawful Detainer statute, the district court correctly ruled that the proceeding should have been brought under the Mobile Home Act because Ortega qualified as a resident. Thus, the district court ruled that the attorney fee provisions of the Mobile Home Act were applicable, and Ortega was entitled to attorney fees as the prevailing party.[8]

¶50 Although the Mobile Home Act's fee provisions do not explicitly cover fees on appeal, *Brookside*'s analysis of the

---

7. This award was part of the judgment against Ridgewood and not related to the attorney fees the district court awarded against Fischer as special damages in the slander of title judgment.

8. Defendants argue that Ortega should not have been awarded fees because he should not have prevailed at trial. They do not argue that, having prevailed, he was not entitled to fees under the Mobile Home Act.

attorney fee provision of the Mobile Home Act guides us. *See Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶¶ 23–26, 48 P.3d 968. In *Brookside*, the Utah Supreme Court held that if the successful party in an eviction action remains successful on appeal, that party is entitled to attorney fees on appeal under the Mobile Home Act. *Id.* ¶ 26 (citing Utah Code Ann. § 57-16-8 (LexisNexis 2000)). Therefore, as the successful party, Ortega is entitled to reasonable costs and fees in defending against this eviction proceeding at the district court and court of appeals. *See id.*; *see also Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) (plurality opinion) ("This court has interpreted attorney fee statutes broadly so as to award attorney fees on appeal where a statute initially authorizes them."). Therefore, we award Ortega reasonable attorney fees incurred on appeal in connection with the eviction action. Because Ortega's cross-appeal did not directly contest the eviction proceeding itself, we do not award attorney fees for the cross-appeal. *See Brookside*, ¶¶ 24–26.

## CONCLUSION

¶51     We affirm all the district court's rulings challenged on appeal or cross-appeal. We remand for the sole purpose of determining Ortega's attorney fees incurred on appeal in connection with the eviction claim.

———————