2017 UT App 84

## THE UTAH COURT OF APPEALS

JACK PHILLIPS,
Petitioner,

*v.*

DEPARTMENT OF COMMERCE, DIVISION OF SECURITIES,
Respondent.

Opinion
No. 20150534-CA
Filed May 18, 2017

Original Proceeding in this Court

Maria E. Windham, Beth J. Ranschau, and Whitney
Hulet Krogue, Attorneys for Petitioner

Sean D. Reyes, Brent A. Burnett, and Thomas M.
Melton, Attorneys for Respondent

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

ROTH, Judge:

¶1     Petitioner Jack Phillips seeks review of a state agency's assessment against him of $413,750 in civil penalties for securities fraud. We set aside the penalty and return the case to the agency to reconsider the fine amount.

## BACKGROUND

¶2     In late 2011, the Division of Securities (the Division) filed a Notice of Agency Action and Order to Show Cause against Jack Phillips. The Division alleged that Phillips violated the Utah Uniform Securities Act (the Act) by making false statements in connection with the sale of securities to investors on several occasions.

¶3 After a formal administrative adjudication, the Utah Securities Commission (the Commission) determined that Phillips committed four violations of the Act, once by soliciting Utah residents to invest in a multi-level marketing opportunity and three times by soliciting residents to invest in a deal to import emeralds from Brazil. The Commission ordered Phillips "to pay to the Utah Division of Securities a civil penalty in the amount of $413,750," including "$315,000 in investor losses," "$78,750 as a fine for violations of [the Act]," and "$25,000 in investigative costs."[1]

¶4 Phillips requested agency review from the Department of Commerce. The Department adopted the substance of the Commission's decision but remanded for the "limited purpose of obtaining a more detailed Order that discusses the Commission's thought process and analysis with respect to" the regulatory guidelines used to determine the amount of the penalty. On remand, the Commission amended two paragraphs of its original decision to provide additional explanation for its penalty assessment. One of those paragraphs is central to this review and reads in part as follows:

> In this case, Respondent [Phillips] developed very personal, trusting relationships with the [victims] over time. On the basis of these relationships of trust and confidence, and through repeated and persistent solicitation, Respondent convinced the [victims] that he was favoring them with an exclusive opportunity not otherwise available. This predatory behavior in taking advantage of persons with whom he had a close, personal relationship constitutes affinity fraud by Respondent, which is a particularly serious and repellent form of deceit

---

1. We note that the Commission's total civil penalty calculation was $5,000 less than the sum of its parts. Because we set aside the penalty, we do not address this apparent arithmetic error.

and must be severely sanctioned in order for the sanction to act as a deterrent. In addition, Respondent has not cooperated with the Division, either to locate [a co-defendant] or in any other manner. In these circumstances, the total investor losses of $315,000 directly caused by Respondent's actions are appropriately included in the total fine amount, as are the Division's claimed investigative costs of $25,000. In accordance with precedent, the Commission also finds it appropriate to assess, as a penalty for violations of the chapter, a fine calculated at 25% of the total investor losses.

(Footnote omitted.)

¶5     After the Commission entered its amended order, Phillips again sought agency review from the Department of Commerce, claiming that the amendments were an impermissible post hoc rationalization for the civil penalty. The Department of Commerce rejected Phillips' contention and adopted the bulk of the Commission's amended decision.[2] Phillips petitioned this court to review the Department's decision.


ISSUES AND STANDARDS OF REVIEW

¶6     This court is empowered to conduct "judicial review of final agency action." Utah Code Ann. § 63G-4-401(1) (LexisNexis 2014). Here, the final agency action for our review is the Department of Commerce's Second Findings of Fact, Conclusions of Law, and Order on Review. However, the Department's order simply adopted the Commission's amended

---

2. The Department rejected a small change within the Commission's amended order, but that detail has no impact on our resolution of this case.

order as discussed above. Therefore, our review focuses on the substance of the Commission's decision.

¶7     In his petition, "Phillips challenges only the monetary penalty the Commission imposed." He raises multiple issues under the Utah Administrative Procedures Act that focus on various ways in which the Commission either violated the federal constitution, acted beyond its statutory jurisdiction, or erroneously applied the law. *See id.* § 63G-4-403(4)(a), (b), (d), (e). "Those arguments present questions of law subject to review for correctness." *Hughes Gen. Contractors, Inc. v. Labor Comm'n*, 2014 UT 3, ¶ 6, 322 P.3d 712. One of Phillips' arguments also involves the Commission's interpretation and application of a regulation. "We review administrative rules in the same manner as statutes, focusing first on the plain language of the rule. In our inquiry, we seek to give effect to the intent of the body that promulgated the rule." *Utah Chapter of Sierra Club v. Air Quality Board*, 2009 UT 76, ¶ 13, 226 P.3d 719 (citations and internal quotation marks omitted).

ANALYSIS

¶8     Phillips challenges the monetary penalty assessed against him by the Commission. Specifically, he argues that (1) part of the Commission's enforcement action was time-barred, (2) the penalty exceeded the Commission's statutory authority, and (3) the penalty was unconstitutionally excessive under the Eighth Amendment to the United States Constitution. At bottom, these arguments rest on the scope of the enforcement powers available to the Commission under the Act, and we therefore begin by describing the statutory framework controlling his challenge before addressing Phillips' arguments.

¶9     "Under the Utah Uniform Securities Act the Division has three avenues for enforcing the provisions of the Act: equitable actions, administrative proceedings, and criminal actions." *Mack v. Department of Commerce*, 2009 UT 47, ¶ 27, 221 P.3d 194. This case involves a proceeding along the administrative path and the

criminal avenue is not at issue. And while the statutory provision allowing an equitable enforcement action in district court is not directly at issue, that provision does play a part in our resolution of both the statute of limitation and the fine issues Phillips raises.

¶10    At the time in question, the Act set forth two parallel avenues for civil enforcement.[3] One—the equitable action avenue—allowed the Division to bring a judicial action to enforce the Act in district court. Utah Code Ann. § 61-1-20(2) (LexisNexis 2011). Under this option, the district court was authorized to provide injunctive relief, order restitution of victim losses and disgorgement of gains from the unlawful activity, and impose fines of not more than $10,000 per violation, among other remedies. *Id.* § 61-1-20(2)(b) (outlining the court's power). Alternatively, the second avenue for civil enforcement—the one the Division chose here—allowed it to enforce the Act administratively by bringing a case before the Commission. *Id.* § 61-1-20(1).

¶11    With the statutory framework in mind, we turn to Phillips' arguments. We begin by addressing whether the Division was time-barred from enforcing one of the violations against Phillips. We then examine the Commission's civil penalty assessment in light of its statutory authority. Finally, we address the Eighth Amendment's limitation on excessive fines.

I. Statute of Limitation

¶12    One of the four violations of the Act related to Phillips' solicitation of investments in a multi-level marketing scheme in July 2006. Phillips argues that the Division was time-barred from seeking enforcement in connection with that particular

---

3. The Utah Legislature made significant changes to the Act in 2016. We address the Act as it was codified when this action commenced in 2011.

transaction, but concedes that enforcement of the other three violations was timely. In support, he urges us to apply the five-year statute of limitation found in the 2011 version of the Act. In this case, there is no dispute that the Division commenced its enforcement proceeding five years and six months after the violation. The only question for us on review is therefore whether the Act's limitation period applied to the Division's enforcement action.

¶13  The State argues that the statute of limitation does not apply, and we agree. The statute provides, "No indictment or information may be returned or civil complaint filed under [the Act] more than five years after the alleged violation." Utah Code Ann. § 61-1-21.1(1) (LexisNexis 2011). The limitation clearly applied to criminal prosecutions because it expressly discussed indictments and informations, which are the first step in a criminal prosecution. *See* Utah Const. art. I, § 13 ("Offenses . . . shall be prosecuted by information . . . or by indictment . . . ."). Similarly, the Act's limitation period expressly applied to civil actions, which are initiated by civil complaint. *Compare* Utah R. Civ. P. 3(a) ("A civil action is commenced (1) by filing a complaint with the court . . . ."), *with* Utah Code Ann. § 61-1-21.1(1) (prohibiting the filing of a "civil complaint" "more than five years after the alleged violation").

¶14  Phillips, though, does not contend that the proceedings below were either a criminal prosecution or a civil action. Rather, he claims that the term "civil complaint" in the statute "encompasses any authority exercised by the Division under [the Act]" and therefore the statute of limitation applies to the administrative proceeding at issue here. But this court has explained that "an administrative disciplinary hearing is not a civil proceeding." *Rogers v. Department of Bus. Regulations*, 790 P.2d 102, 105 (Utah Ct. App. 1990). In particular, the *Rogers* court noted that civil actions are commenced "by filing a complaint" or "by the service of a summons," *id.* at 106 (citing Utah R. Civ. P. 3(a)), whereas the administrative enforcement action reviewed in *Rogers* was commenced when "the [agency] filed a petition

with the [administrative tribunal]" to revoke a broker's license, *id.* at 104. Based in part on that distinction, the court concluded that, "[i]n the absence of specific legislative authority, civil statutes of limitation are inapplicable to administrative disciplinary proceedings." *Id.* at 105.

¶15 The same reasoning applies in this case. To invoke the administrative enforcement avenue at issue here, the Act directed the Division to file an order to show cause before the Commission. Utah Code Ann. § 61-1-20(1)(a). However, the Act's limitation period applied only to actions commenced by "indictment or information . . . or civil complaint." *Id.* § 61-1-21.1(1). Because "an administrative disciplinary hearing is not a civil proceeding," and an order to show cause is different in kind from a civil complaint, the civil statute of limitation did not apply to the Division's administrative enforcement efforts under the Act. *See Rogers*, 790 P.2d at 105. We therefore decline to disturb the Commission's determination that enforcement of the multi-level marketing violation was timely.[4]

## II. Statutory and Regulatory Authority

¶16 In its decision, the Commission assessed a civil penalty against Phillips in the amount of $413,750. Phillips argues that the penalty assessment exceeded the Commission's statutory authority in two ways. First, he claims that the Act imposes a

---

4. We note that, contrary to Phillips' assertion, the absence of an applicable statute of limitation did not grant the agency unlimited time during which to proceed with administrative enforcement. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1973–74 (2014) (indicating that, when the legislature "has provided no fixed time limitation," the doctrine of laches serves a "gap-filling" function). We further note that the Utah Legislature recently added a ten-year administrative statute of limitation to the Act. *See* Utah Code Ann. § 61-1-21.1(2) (LexisNexis Supp. 2016).

$10,000 per violation limit on the Commission's fine assessment. Second, he argues that the Commission ordered him to pay restitution in violation of the Act and its implementing regulations. We address each argument and then turn to the penalty assessment as a whole.

A.    Fine Limitation

¶17    The essence of Phillips' first statutory argument is that the Act places a $10,000 per violation cap on a court's fining authority under the judicial enforcement avenue, and that the cap must also apply to enforcement actions taken under the administrative enforcement avenue even though the statute places no explicit limitation on administrative fines. He bases his argument on the proposition that, for the Division to enforce an administrative order, it "must file an action in district court." The premise behind his argument is that an order from the Commission has no independent force or effect and therefore must be enforced through a collateral judicial proceeding. And because the Act placed a limitation on the court's authority to enter a fine, Phillips contends that the limit implicitly applied to administrative fines as well. That is, "[b]ecause the [Division] must enforce any orders through [the judicial avenue of the Act], the $10,000 fine per violation limitation applies to limit the monetary penalty imposed by the [Commission]."

¶18    In support, Phillips directs our attention to a footnote in *State v. Bushman* where we noted that "the fines that the Division could impose and judicially enforce were limited . . . to $10,000 per violation." 2010 UT App 120, ¶ 21 n.4, 231 P.3d 833. Thus, he claims that this court has already analyzed the Act and found that the fine limitation applicable to judicial enforcement also applies to administrative enforcement.

¶19    We are not persuaded by Phillips' argument for two reasons. First, although the footnote language in *Bushman* seems broadly on point, that decision was a double jeopardy challenge to a criminal conviction and involved a civil fine that the defendant agreed to in a consent decree. Thus, the footnote was

obiter dicta; *Bushman* did not present the question at issue here, did not parse the differences in wording between the two statutory avenues of enforcement, and cited exclusively the subsection of the Act applicable to judicial actions. *See Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 14 n.4, 379 P.3d 18 ("Obiter dicta refers to a remark or expression of opinion that a court uttered as an aside[.]" (citation and internal quotation marks omitted)). We therefore do not consider *Bushman* to be controlling on this point.

¶20    Second, Phillips' argument asks us to interpret the Act in a way that imports language from one enforcement avenue of the statute into another. "The best evidence of the legislature's intent is the plain language of the statute itself." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (citation and internal quotation marks omitted). "We need look beyond the plain language only if we find some ambiguity." *State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795. Here, no party asserts that the statute is ambiguous and no ambiguity is self-evident. Our analysis therefore begins and ends with the Act's plain language, which does not support Phillips' contention.

¶21    As we noted above, the Utah Legislature granted overlapping authority to the Commission and the courts to enforce the Act. *See Mack v. Department of Commerce*, 2009 UT 47, ¶ 34, 221 P.3d 194, ("[T]he Securities Act provides concurrent jurisdiction in the district court and the [agency] . . . ."). The legislature differentiated between the two forums, however, by providing each with different remedial powers. Specifically, the Act placed a $10,000 per violation limit on fines assessed under the judicial enforcement avenue but placed no express limit on fines assessed under the administrative enforcement avenue. *Compare* Utah Code Ann. § 61-1-20(2)(b)(viii) (LexisNexis 2011) (stating that the court may "impose a fine of not more than $10,000 for each violation"), *with id.* § 61-1-20(1)(f) (stating that "the commission may impose a fine").

¶22    Because "we presume that the expression of one term should be interpreted as the exclusion of another," we "seek to give effect to omissions in statutory language by presuming all omissions to be purposeful." *Marion Energy*, 2011 UT 50, ¶ 14, (brackets, citation, and internal quotation marks omitted). Here, the legislature expressed a $10,000 limit in the judicial enforcement subsection of the Act but omitted the limit from the administrative enforcement subsection, an omission we must presume to have been deliberate. Further, Phillips' proposed reading of the Act renders the administrative enforcement avenue meaningless surplusage. *See Mallory v. Brigham Young Univ.*, 2014 UT 27, ¶ 13, 332 P.3d 922 ("[W]e seek to render all parts [of the statute] relevant and meaningful [by] avoid[ing] an interpretation which renders portions of, or words in, a statute superfluous or inoperative." (second and fourth alterations in original) (citations and internal quotation marks omitted)). If the Act required the Division to always seek judicial enforcement of Commission orders, and the restraints applicable to original judicial proceedings applied when it did so, there would have been no reason for the legislature to establish a separate—and effectively redundant—administrative enforcement mechanism. Thus, we conclude that the plain language of the statute does not support Phillips' argument that the Commission's administrative fine authority was subject to the $10,000 per violation limitation applicable to judicial enforcement actions.

¶23    Phillips contends, however, that whether or not the statute expresses any direct constraint on administrative fines, the "Division must file an action in district court" to enforce an order from the Commission and that "[t]his civil enforcement action triggers the limitations" applicable to judicial enforcement actions, namely the $10,000 per violation fine limitation. That is, Phillips argues that "the amount of any monetary penalty assessed in an administrative proceeding is limited to $10,000 per violation" because "a district court is only allowed to enforce fines up to $10,000."

¶24    However, this is an argument about the court's power to enforce a Commission order, not about the Commission's power to issue the order in the first instance. Here, the Division has not sought enforcement of the Commission's order in district court. Thus, any question about the court's authority to enforce the fine is not ripe for our review—Phillips has not yet asked the district court to decide the question. Until Phillips first tests his theory in district court, we are powerless to consider it. *See Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 29, 215 P.3d 933 ("An issue is not ripe for appeal if there exists no more than a difference of opinion regarding the hypothetical application of a provision to a situation in which the parties might, at some future time, find themselves." (brackets, citation, and internal quotation marks omitted)).[5]

¶25    For these reasons, we conclude that by statutory design the Commission's power to order fines was free from the limitation placed on the district court's power. Whether the district court had power to enforce a Commission fine in excess of $10,000 per violation is a question not ripe for our review, and we decline to address it.

B.    Restitution

¶26    Phillips next argues that the $315,000 investor-loss component of the Commission's civil penalty "is an order of restitution, which improperly invades the province of the district court." In part, this argument is based on the plain language of the statute that we have discussed above. Specifically, Phillips points out that the Act expressly grants the district court power

---

5. In his reply brief, Phillips makes a similar argument with regard to the statute of limitation, namely that the civil enforcement time limitation is triggered when the Division seeks enforcement of a Commission order in district court. We decline to reach the issue for the same reason previously discussed—it is not ripe for decision on this procedural posture.

to award restitution in judicial enforcement actions but is silent as to the Commission's power to order restitution.[6] *Compare* Utah Code Ann. § 61-1-20(2)(b)(vii) (LexisNexis 2011) (granting the district court power to "order restitution"), *with id.* § 61-1-20(1)(h) (limiting the Commission's range of sanctions to imposing fines, issuing cease and desist orders, and barring the respondent from associating with securities brokers).

¶27　We agree with Phillips that the Act does not grant the Commission the power to order restitution for the same reason that the $10,000 fine limitation applicable to judicial enforcement does not apply to administrative enforcement, namely that we "seek to give effect to omissions in statutory language by presuming all omissions to be purposeful." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863. Because the Act omitted any mention of restitution when describing the remedies available in administrative enforcement proceedings, we conclude that ordering restitution was beyond the Commission's power.

¶28　But even though the Commission's imposition of a civil penalty that included "$315,000 in investor losses" bears a facial similarity to what a restitution award would likely have been in this case—they are similar in amount—we are not persuaded the

---

6. Phillips argues that the $10,000 per violation cap on judicially imposed fines applies to administrative proceedings *even though* there is no similar limitation in the administrative enforcement avenue of the statute. He also argues that the judicial power to order restitution does not apply in administrative proceedings *because* there is no similar restitution provision in the administrative enforcement avenue. That is, he simultaneously argues that the legislature's restriction on judicial enforcement power applies to administrative actions, but the legislature's expansion of judicial enforcement power does not. Phillips does not explain this contradiction.

Commission ordered restitution in this case. Indeed, the dollar value assessed against Phillips is the sole extent of the similarity between the Commission's penalty and an order of restitution. Restitution is the "[r]eturn or restoration of some specific thing to its rightful owner or status." *Restitution*, Black's Law Dictionary (10th ed. 2014). In this case, the Commission ordered Phillips "to pay to the Utah Division of Securities a civil penalty" that included "$315,000 in investor losses." Because Phillips was directed to pay the amount of investor losses to the State rather than to the victims of his fraud, the civil penalty was not aimed at the "restoration of [money] to its rightful owner," *see id.*, and was therefore not restitution.

¶29    Our conclusion is supported by the structure of the Act, which directed the Division to deposit all "administrative fines collected" into a special revenue fund. Utah Code Ann. § 61-1-18.7(2) (LexisNexis 2011). Under the Act, the special fund could be used "only for" Division expenses related to operations, investor education, investigations and litigation, and the like. *Id.* § 61-1-18.7(5) (omitting compensating victims from the list of things on which money in the special revenue fund money could be spent). We therefore conclude that the Commission did not order restitution.[7]

---

7. Although we conclude the Commission did not order restitution, we note that the fine amount could have an effect on restitution because the total fine assessed—$413,750—is a significant sum of money for all but the most financially secure. Although a petitioner's financial situation is irrelevant to our decision, as a general matter the imposition of such a substantial penalty could negatively impact the ability of a victim of securities fraud to ultimately recover against the perpetrator in a collateral proceeding.

C.    The Civil Penalty

¶30    Although we have rejected Phillips' specific contentions, we find merit in his broader argument. He points out that the Utah Administrative Code sets forth the "guidelines for the assessment of administrative fines." Utah Admin. Code R164-31-1(A)(2) (2011). Phillips concedes that, as part of the guidelines, the Commission could consider "the harm to other persons, including the amount of investor losses." He asserts, though, that the guidelines were simply to be used as factors in determining "whether to impose the maximum fine of $10,000 per violation" of the Act. We have rejected the contention that the Commission's power to assess a fine was capped at $10,000, but we agree with Phillips that the guidelines in the administrative code controlled how the Commission was to exercise its authority. *See* Utah Code Ann. § 63G-3-202(2) (LexisNexis 2014) ("An agency's written statement that is made as a rule . . . has the effect of law.").

¶31    We begin by recognizing, as we have discussed, that the Act granted the Commission broad discretion to "impose a fine." *Id.* § 61-1-20(1)(f). But in its order, the Commission imposed a "civil penalty" composed of three components: "$78,750 as a fine for violations," as well as "$315,000 in investor losses," and "$25,000 in investigative costs." Even if we presume that the Commission's use of the term "civil penalty" is synonymous with the term "fine" as used in the Act,[8] it is difficult to

---

8. We are not convinced this is so. In section 18.7 of the Act, the legislature used both terms, "civil penalty" and "fine." *See* Utah Code Ann. § 61-1-18.7(2) (LexisNexis 2011). Given that the legislature used "civil penalty" in one section of the Act, but chose not to include it within the enforcement section, we presume that the terms are not synonymous. *See Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 670 (Utah 1991) ("In construing legislative enactments, the reviewer assumes that each term in the statute was used advisedly . . . .").

understand how a fine could include "$78,750 as a fine," as well as separate additional assessments of $315,000 and $25,000, and still be a just a fine. On the face of its order, the Commission appears to have assessed a fine, which was allowed under the Act, and then assessed two additional, distinct, and very substantial monetary penalties, which were not.

¶32 Our review of the Commission's amended order confirms that point. In it, the Commission concluded that Phillips' actions in this case "constitute[d] affinity fraud . . . which is a particularly serious and repellent form of deceit and must be severely sanctioned." The Commission also noted, however, that there was "no evidence in the record that [Phillips] received any meaningful financial benefit, enrichment, commission, fee or other consideration from the transaction." On those conclusions, and "according to established precedent for a first offense where the respondent received little to no financial benefit," the Commission found it "appropriate to assess, as a penalty for violations of this chapter, a fine calculated at 25% of the total investor losses." Thus, the Commission imposed a fine of $78,750, or one quarter of the total $315,000 of loss suffered by the victims. If it had stopped there, the fine amount might be difficult to contest.

¶33 The Commission did not stop there however. It also concluded that "the total investor losses of $315,000 . . . are appropriately included in the total fine amount, as are the Division's claimed investigative costs of $25,000." If 25% of total investor losses was the appropriate measure for a fine given the circumstances of Phillips' violations, it is difficult to understand how the additional components of $315,000 and $25,000 were also justified by the applicable rules.

¶34 At the time the fine was ordered, the Utah Administrative Code set forth the guiding factors that the Commission "shall consider" in "determining the amount of an administrative fine assessed against a person under [the Act]." Utah Admin. Code R164-31-1(B)(1) (2011). Those factors were:

> (a) the seriousness, nature, circumstances, extent, and persistence of the conduct constituting the violation;
>
> (b) the harm to other persons resulting either directly or indirectly from the violation;
>
> (c) cooperation by the person in any inquiry conducted by the Division concerning the violation, efforts to prevent future occurrences of the violation, and efforts to mitigate the harm caused by the violation, including any restitution made to other persons injured by the acts of the person;
>
> (d) the history of previous violations by the person;
>
> (e) the need to deter the person or other persons from committing such violations in the future; and
>
> (f) such other matters as justice may require.

*Id.* R164-31-1(B)(1).

¶35 Under the rule, it was certainly appropriate for the Commission to consider "investor losses" in determining the amount of a fine because they fall within the scope of the "harm to other persons" mentioned in factor (b) and perhaps serve to emphasize "the seriousness" of Phillips' conduct under factor (a). However, the rule identifies those considerations as "factors" to be taken into account in determining an appropriate fine under the particular circumstances of a case, not as a discreet component of such a fine. The same is true of "investigative costs," which could fall within factor (c)— that factor's reference to "cooperation by the person in an inquiry" could encompass consideration of the effects of failure to cooperate on the Division's investigatory costs. The broad language of factor (c), however, does not suggest that the costs of investigation could simply be assessed against Phillips rather than considered along with other pertinent circumstances.

¶36 Here the Commission apparently treated investor losses and investigative costs as if they were discrete calculations to be added to a base fine instead of using them as factors to be taken into account in assessing the appropriate size of the unitary fine authorized by the Act. Indeed, the Commission appears to have relied on investor losses twice—once when it calculated its base fine of $78,750 by taking a percentage of investor loss, and then again by assessing investor losses against Phillips on a dollar-for-dollar basis. Particularly considering that "[t]he guidelines should not be considered all-inclusive but rather are intended to provide factors to be considered when imposing a fine," *id.* R164-31-1(A)(2), it is apparent that the regulation's purpose was to provide a framework for weighing and balancing the applicable factors to ensure fine assessments were commensurate with the gravity of the particular violation and consistently applied over time. That is, the factors were not simply a list of the various categories for which discrete dollar amounts could be combined into a total civil penalty assessment, as appeared to occur in this case. Rather, the regulation required the Commission to set a fine amount based on a multi-factor balancing inquiry that took various elements, such as investor loss, into account.

¶37 Because the Commission was empowered to consider investor losses and investigative costs, but not empowered to directly assess them against Phillips as individual components, we conclude that "the agency has erroneously interpreted or applied the law." *See* Utah Code Ann. § 63G-4-403(4)(d) (LexisNexis 2014). Both the individual components included within the Commission's civil penalty assessment must therefore be set aside.[9]

---

9. In the proceeding below, Phillips argued that, because the victims took possession of a quantity of "emeralds" related to the failed investment, the value of the stones should be an offset against the Commission's total fine amount, which included

(continued…)

¶38 Finally, we address the civil penalty's remaining component of "$78,750 as a fine for violations" of the Act. "An administrative agency must make findings of fact and conclusions of law that are adequately detailed so as to permit meaningful appellate review." *Adams v. Board of Review of Indus. Comm'n*, 821 P.2d 1, 4 (Utah Ct. App. 1991). Specifically, "findings should be sufficiently detailed to disclose the steps by which the ultimate factual conclusions, or conclusions of mixed fact and law, are reached." *Milne Truck Lines, Inc. v. Public Serv. Comm'n*, 720 P.2d 1373, 1378 (Utah 1986). "Without such

---

(…continued)

investor losses as a component. The Commission apparently agreed in principle but declined to calculate an offset because Phillips offered no evidence of the emeralds' value. Phillips argues on review that the Commission's decision improperly burdened him with the responsibility to prove the emeralds' value. However, the Commission was conducting its analysis under the premise that investor losses was a component to be included within the total fine amount, not as one factor among several to consider when setting the fine. Given that we have rejected the premise under which the Commission analyzed the issue, the question of an offset—and which party would bear the burden to prove it—is no longer properly before us. In addition, we note that the concept of offset does not per se apply to the determination of the amount of a fine because investor losses are not a discrete component of a fine from which a precise offset can be deducted. Rather, as we have discussed, the Commission is empowered to *consider* investor loss. Certainly, in considering this factor, the Commission may take into account whether the victim's losses have been mitigated as well as the significance of the source of such mitigation—for example, whether from the perpetrator of the fraud, a third party, or the victims' own efforts. But a requirement for precise calculation of an offset does not seem to be consistent with the role of "investor losses" as one factor of many to be taken into account in assessing a fine appropriate to the gravity of a particular violation.

findings, [appellate courts] cannot perform [their] duty of reviewing the Commission's order in accordance with established legal principles and of protecting the parties and the public from arbitrary and capricious administrative action." *Id.*

¶39   Because we have set aside two of the three components that the Commission included within its "civil penalty" assessment, we are not able to conduct a meaningful review of the remaining $78,750. For example, it is apparent that the Commission considered at least some of the guiding factors established in the administrative code, such as the amount of the victim's loss, investigatory costs, the nature of Phillips' offense, and the fact that he was a first-time offender who did not realize any financial gain. However, the Commission conducted its entire analysis of the factors, and the three discrete components of the civil penalty, within a single paragraph of its amended order. Based on that single paragraph, we are not able to meaningfully distinguish the rationale that supported the $78,750 "fine" component from the rationale that supported the other two components that we have set aside. *See id.* at 1378.

¶40   In addition, we note that neither party has briefed the Commission's $78,750 fine assessment standing alone, which not only further hampers our ability to engage with the Commission's decision but cautions against our undertaking such an analysis on our own. Therefore, in keeping with our standard of review, we set aside the Commission's remaining fine assessment of $78,750 and return the matter to the Commission for reconsideration.[10]

---

10. Because we have set aside the entire civil penalty assessed against Phillips, we do not address Phillips' contention that the Commission's amended order was an improper post hoc justification of its fine.

### III. The Eighth Amendment

¶41 Phillips additionally argues that the Commission's fine was "unconstitutionally excessive under the Eighth Amendment." That amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Excessive Fines Clause [of the amendment] thus limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (citation and internal quotation marks omitted).

¶42 Because we have set aside the entire fine assessment and directed the Commission to reconsider the matter, we do not reach the merits of Phillips' constitutional argument. However, we note that the Eighth Amendment unquestionably places upper limits on the Commission's power to impose a fine on Phillips or any other violator of the Act. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 334. To determine proportionality, appellate courts "compare the amount of the forfeiture to the gravity of the defendant's offense" while keeping in mind two factors: (1) that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature"; and (2) "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Id.* at 336–37. "If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Id.* at 337.

¶43 In *Brent Brown Dealerships v. Tax Comm'n*, this court examined and applied "the framework for determining whether a statutory penalty complies with the Eighth Amendment." 2006 UT App 261, ¶ 14, 139 P.3d 296. There, we applied the "grossly disproportional" test from *Bajakajian* and concluded that a

$135,000 penalty for violations of state licensing statutes was not excessive. *Id.* ¶¶ 20–24. In reaching that conclusion, we noted that "at least fifty-one unlicensed salespeople" sold "306 vehicles over a period of twenty months," which, according to testimony from state officials, was "the most extensive violation of the licensing statutes they had ever seen." *Id.* ¶ 20. We also examined the amount of gain realized by the car dealership, estimated at more than $6 million in revenue, in relation to the $135,000 fine. *Id.* ¶ 21. On a unit basis, we determined that the fine only amounted to $441 per violation, which fell "well within the limits of the Eighth Amendment." *Id.*

¶44    Thus, while we offer no opinion on what fine may be appropriate for Phillips on remand or what specific constraints are placed on the Commission by the Eighth Amendment in a given circumstance, we note that the Commission's fine will need to fall within constitutional constraints.

CONCLUSION

¶45    We conclude that the Division was not time-barred from seeking enforcement of any of Phillips' violations of the Act and that the Commission did not improperly order restitution against him. However, we also conclude that the Commission erroneously interpreted and applied the fine assessment guidelines in the Utah Administrative Code. We therefore set aside the Commission's civil penalty assessment and direct it to reconsider the fine in light of this opinion.

_____